William C. TURNER, et al.,
Plaintiffs-Appellees,

v.

Verne ORR, Secretary of the Air Force,
et al., Defendants-Appellants.

No. 84–3694.

United States Court of Appeals,
Eleventh Circuit.

April 7, 1986.

Mark W. Pennak, Robert S. Greenspan, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendants-appellants.

Thomas A. Warren, Tallahassee, Fla., for plaintiffs-appellees.

Before HILL and CLARK, Circuit Judges, and HOBBS *, Chief District Judge.

---

* Honorable Truman M. Hobbs, Chief U.S. District Judge for the Middle District of Alabama, sitting by designation.

CLARK, Circuit Judge:

This appeal involves applications for attorneys' fees under a consent judgment entered in a case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to e–17. The issues presented for decision are:

(1) Whether the district court erred in awarding attorneys' fees to the Plaintiffs' Monitoring Committee (PMC), an entity created under the terms of the consent judgment to assure its enforcement, for time spent by PMC counsel

    (A) representing individual claimants who did not prevail on their claims of consent judgment violations; and

    (B) on litigation in which the PMC did not prevail; and

(2) Whether the district court erred in refusing to disqualify counsel for the PMC for representing both the PMC in the performance of its role of screening, for merit, complaints of consent judgment violations and the individual complainants when and if the PMC determined that their complaints were meritorious.

For the reasons set forth below, we affirm these holdings of the district court.

## I. BACKGROUND

The long and contentious history of this action commenced on November 10, 1976, when the plaintiffs filed a class action complaint alleging a pattern and practice of racial discrimination at Eglin Air Force Base in northern Florida. On January 12, 1981, after extensive negotiations and upon its approval by the district court, the parties entered into a consent judgment aimed at eventually curing the claims of discrimination at Eglin. The consent judgment, *inter alia,* enjoins the defendants from engaging in discrimination against class members on the basis of race and provides

for damages to be awarded to class members, the establishment of hiring goals, the promotion of certain class members, the placement of black representatives on the Eglin personnel board, and preferential hiring from a list of qualified class members. In addition, the consent judgment provided that the representatives of the plaintiff class would establish the PMC to, as its name suggests, monitor and ensure the continuing enforcement of the consent judgment.[1] The PMC was authorized under the judgment "to present matters through counsel of its choice in connection with carrying out this judgment to the special master and the court." Consent Judgment at 21.

In section XIII of the judgment, the defendants acknowledge that the plaintiffs are "prevailing parties" for purposes of entitlement to attorneys' fees and costs pursuant to Title VII and, therefore, agree to pay reasonable attorneys' fees for services rendered to the plaintiff class by plaintiffs' counsel. In that section, the defendants further agree to "reimburse plaintiffs for the cost and expenses reasonably

incurred in their prosecution of this litigation including the expenses reasonably incurred or to be incurred by the Plaintiffs' Monitoring Committee in carrying out its duties under this Judgment." Consent Judgment at 28.[2]

Under the terms of the judgment, class members with allegations that the judgment has been violated may pursue their discrimination complaint under the Civil Rights Act of 1964, the Civil Service Reform Act of 1978, or the consent judgment. If the employee or the applicant for employment chose to proceed under the judgment, the complaint was first brought by the complainant to the PMC. The PMC was to review the complaint and, if it believed that the complaint had merit, present the complaint to a special master, who then determined if a violation of the consent judgment had occurred. Consent Judgment, Section IX.[3]

On October 12, 1982, counsel for the PMC filed its initial request for fees. The appellants have objected to any award of fees to PMC counsel (A) for time spent

---

1. The PMC was abolished on January 25, 1985 as the result of modifications to the consent judgment by the district court.

2. Section XIII of the consent judgment provides as follows:

   COSTS AND ATTORNEY FEES

   1. Although the resolution of this case is being effectuated without trial and without findings being entered by the Court with respect to the allegations contained in the pleadings, the defendants acknowledge that the plaintiffs are "prevailing parties" for purposes of entitlement to attorney's fees and costs pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k). The defendants shall, therefore, pay to plaintiffs' counsel reasonable attorney's fees for services rendered the plaintiffs' class. Defendants shall also reimburse plaintiffs for the cost and expenses reasonably incurred in their prosecution of this litigation including the expenses reasonably incurred or to be incurred by the plaintiffs' Monitoring Committee in carrying out its duties under this Judgment. If the parties cannot agree on the sum to be awarded for attorney's fees and costs, the matter shall be referred to the Court for decision.

3. The pertinent portions of Section IX provide as follows:

   SECTION IX:

   JUDGMENT ENFORCEMENT PROCEDURES

   . . . .

   The Plaintiffs' Monitoring Committee is authorized to present matters through counsel of its choice in connection with carrying out this Judgment to the Special Master and the Court. . . . .

   . . . .

   4. All class members wishing to present complaints of Judgment violation shall contact the Plaintiffs' Monitoring Committee. . . . . If the Committee in consultation with counsel, is of the opinion that the complaint merits presentation before the Special Master, the complaint shall be presented to the Special Master. The Special Master shall have plenary authority to determine the procedures to be used in resolving such complaints by the class members. In the event that the Special Master determines that a violation of the Judgment has occurred, he shall be authorized to order all appropriate relief therefor, including the award of costs and attorney fees. The parties shall have the right to appeal any such decisions to the United States District Court for the Northern District of Florida, and all other rights of appeal are preserved.

upon representation of individual claimants to relief under the judgment who did not prevail on their claims before the special master and (B) for time spent upon litigation brought on behalf of the PMC in which the PMC did not prevail. Appellants base these objections upon their contention that only prevailing parties are entitled to have their fees paid by the defendants for litigation in connection with this case. The PMC responds that section XIII of the consent judgment specifically requires the defendants to reimburse plaintiffs for "expenses reasonably incurred in their prosecution of this litigation including the expenses reasonably incurred ... by the Plaintiffs' Monitoring Committee...." Consent Judgment at 28.

The special master and the district court agreed with the PMC's interpretation of the consent judgment and determined that the test to be applied for awards of attorneys' fees is not a "prevailing party" test but a "reasonableness" test, judging the reasonableness of the services performed and the fees to be paid. Employing this test, the special master recommended and the district court awarded attorneys' fees to PMC counsel (A) for time spent representing those individuals with complaints of violation of the judgment which the PMC found to be meritorious in the presentation of their complaints to the special master and (B) for time spent representing the PMC in litigation in which the PMC failed to prevail on appeal in its assertion that decisions of the special master were not judicially reviewable.[4]

The appellants in the district court moved to disqualify PMC counsel from representing the PMC in its job of screening individual claims of violation of the judgment to determine whether or not they were meritorious and then representing those individual claimants whose complaints the PMC had found to have merit in the presentation of those claims to the special master. The special master and the district court ruled that PMC counsel was disqualified from representing individuals with claims found to be non-meritorious by the PMC. Further, PMC counsel was disqualified from representing any of the competing complainants when two or more class members were found to be competing for the same lost job opportunity, even if the PMC had determined that all of the competing complaints were meritorious, because the interests of the class members were adverse in that they were competing for relief which could only be awarded to one member. However, appellants have failed to have the PMC counsel disqualified from representing individuals with complaints that the PMC had deemed meritorious in their presentation to the special master if there was no competing complainant. In this latter type of case, when PMC counsel represented the claimant before the special master, fees will be awarded as follows: If the claim prevailed before the special master, PMC counsel is awarded reasonable attorneys' fees. If the claim failed before the special master and litigation of the complaint is deemed "reasonable" under section XIII, paragraph 1 of the consent judgment, PMC counsel receives reasonable attorneys' fees. And, if the claim failed before the special master and litigation of the complaint is not deemed "reasonable," PMC counsel receives no fees.

## II. DISCUSSION

### A.

On the issue of attorneys' fees, appellants contend that the consent judgment does not require that they pay the attorneys' fees of non-prevailing individual claimants represented by the PMC counsel and that Title VII precludes an award of attorneys' fees to any non-prevailing parties in litigation under that judgment.

Under section IX of the judgment, appellants point out, the special master is authorized to order "the award of costs and

---

**4.** This court reversed the district court on that question in *Turner v. Orr*, 722 F.2d 661 (11th Cir.1984).

attorney fees" incurred in prosecuting complaints of violations of the judgment only after determining "that a violation of the Judgment has occurred." The special master and the district court, however, have awarded fees for time spent representing claimants who have not prevailed on their claims of violations of the consent judgment, holding that such an award is authorized by section XIII of the judgment, in which defendants agreed to pay "the expenses reasonably incurred or to be incurred by the Plaintiffs' Monitoring Committee in carrying out its duties under this Judgment." Appellants first argue that these holdings are in error because the only reasonable interpretation of section IX is that the parties intended that the PMC make an initial assessment of the merits of an individual's complaint and leave the actual litigation to the individual, who would be entitled to fees only if he actually prevailed on his complaint before the special master.

Appellants next argue that the "prevailing party" requirement of Title VII precludes any fee award for work on behalf of non-prevailing section IX complainants and on behalf of the PMC itself for post-judgment litigation in which the PMC failed to prevail. They begin by noting that section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k) allows an award of attorneys' fees only to the "prevailing party." Appellants then rely on *Firefighters Local Union No. 1784 v. Stotts,* 467 U.S. 561, 104 S.Ct. 2576, 81 L.Ed.2d 483 (1984), arguing that its language to the effect that "a district court cannot enter a disputed modification of a consent decree in Title VII litigation if the resulting order is inconsistent with that statute," 104 S.Ct. at 2587 n. 9, means that the consent judgment cannot be construed as authorizing the special master's award of fees to non-prevailing parties in litigation under that judgment.

Both of these arguments are fatally flawed. The language of the consent judgment itself is ambiguous as to whether or not the PMC was required to litigate before the special master those claims of individual complainants under section IX that it

deemed meritorious. Thus, it is also ambiguous as to whether or not the attorneys' fees for the representation of such claimants is to be paid by the defendants as a reasonable expense of the PMC regardless of whether the claimants prevailed before the special master. In situations such as this, the rule is:

> Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract. Such aids include the circumstances surrounding the formation of the consent order, any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree....

*United States v. I.T.T. Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975) (footnote omitted).

■ Applying this rule to the case at hand, we have both "evidence of events surrounding [the consent judgment's] negotiation and tending to explain ambiguous terms," *id.* at 238 n. 11, 95 S.Ct. at 935 n. 11 (quoting Handler, *Twenty-fourth Annual Antitrust Review,* 72 Colum.L.Rev. 1, 23 n. 148 (1972)), and "documents expressly incorporated in the decree," *id.* at 238, 95 S.Ct. at 935, which indicate that the awards of attorneys' fees are proper because it was the duty of the PMC to litigate individual claims it deemed meritorious before the special master.

Notices of September 29, 1980 and December 16, 1980 sent to class members by order of the district court both contained the following paragraph:

6. If any present or future black employee so desires, the Plaintiff's Committee will litigate valid claims of racial discrimination or retaliation arising since January 9, 1976, into the future before a Special Master established by the Court for this purpose. In addition, the Committee will take all other steps necessary to ensure that the defendants are hon-

oring their commitments under the Judgment.

Record at 54 and 215.

These notices are not only strong evidence of the intent of the parties by virtue of their having been issued during the time period between the preliminary and final approval of the consent judgment by the district court, but they are also "documents expressly incorporated in the decree," having been referred to in section IV of the judgment and contained in the judgment as Attachments A and B.

Further evidence along these same lines may be found in the January 14, 1981 notice to the class of the entry of the consent judgment, which *was stipulated to* by both parties and which contained the following language:

> If you feel that Eglin Air Force Base has discriminated against you in any way on account of your race between January 9, 1976, and the present, you may present your case to the Plaintiffs' Monitoring Committee. If they feel that it is meritorious, the Committee will litigate it for you at no charge....

Record at 313.

Appellants' argument that it was not the duty of the PMC under the judgment to provide for the representation of claimants with complaints that it deemed meritorious in the presentation of those claims to the special master and that attorneys' fees for such representation are therefore not an obligation of the defendants is thus without merit.

■ Appellants' further argument that they are not obliged to pay for unsuccessful post-judgment litigation undertaken by the PMC both on its own and on behalf of section IX complainants because Title VII allows an award of attorneys' fees only to "the prevailing party" is likewise unavailing; for the PMC is a "prevailing party" for purposes of this provision of Title VII even when it is not successful in such post-judgment litigation.

Parties "prevail" when they vindicate rights through a consent judgment.

> [F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.

S.Rep. No. 1011, 94th Cong. 2 Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5908, 5912. *See Miller v. Carson*, 628 F.2d 346, 348 (5th Cir.1980). This fact is specifically recognized in section XIII of the consent judgment in this case:

> [T]he defendants acknowledge that the plaintiffs are "prevailing parties" for purposes of entitlement to attorney's fees and costs pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k). The defendants shall, therefore, pay to plaintiffs' counsel reasonable attorney's fees for services rendered the plaintiffs' class. Defendants shall also reimburse plaintiffs for the cost and expenses reasonably incurred in their prosecution of this litigation including the expenses reasonably incurred *or to be incurred by the Plaintiffs' Monitoring Committee in carrying out its duties under this Judgment....*

Consent Judgment at 27–28 (emphasis added). The consent judgment is deemed a contract. The defendants by contract agreed to pay the very fees they now contest.

Efforts to monitor compliance with a consent judgment "cannot be severed from the matters upon which the plaintiff prevailed" by obtaining the consent judgment. *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985); *see Miller*, 628 F.2d at 348. The PMC was established by the representatives of the plaintiff class to monitor and ensure compliance with the consent judgment, and, in that portion of section XIII of the judgment quoted above, the expenses of the PMC are explicitly included as part of those of the plaintiffs in their prosecution of this litigation. Members of the PMC were appointed by the plaintiffs with no input from the defendants. The PMC was institutionally aligned with and designed to protect the interests of class members, whose rights were vindicated by

the consent judgment. Following entry of the judgment and creation of the PMC, the plaintiffs had virtually no monitoring or enforcement duties since these jobs fell to the PMC under the terms of the judgment.

Thus, under the logic of *Miller* and *Adams,* the expenses of the PMC, including those of its counsel, incurred in its post-judgment efforts at ‧monitoring and enforcement are properly payable by the defendants as those of a "prevailing party" whether or not it prevails in each individual post-judgment effort because these "measures necessary to enforce the remedy ordered by the [district] court cannot be severed from the matters upon which the plaintiff prevailed" in obtaining the judgment. *Adams,* 752 F.2d at 554.

The situation in this case is similar to that in *Miller,* where the plaintiffs filed numerous motions and petitions—most of which were denied—subsequent to final judgment and the district court awarded the plaintiffs fees and costs for these post-judgment efforts because "[a]lthough plaintiffs were not successful in terms of a positive court order, the motions were reasonably related to the claims upon which plaintiffs were definitely successful [and] ... no doubt had the effect of maintaining compliance with the Court's injunction." 628 F.2d at 348 (quoting district court order) (footnote omitted). Our predecessor court, the former Fifth Circuit, then affirmed this award by the district court, holding that "[l]ike the original action for an injunction, the post-judgment motions were directed towards remedying the constitutional wrongs found to exist at the Duval County Jail.... [The plaintiffs'] post-judgment efforts successfully induced [the defendants] to comply with both the constitution and the regime of law, embodying important rights and duties, created by the injunction." *Id.* at 348–349 (footnote omitted). Likewise, in this case,

the post-judgment efforts of the PMC were directed toward the protection of those rights originally vindicated by the consent judgment, and these efforts of monitoring and enforcement qualify the PMC as a "prevailing party" for purposes of receiving payment for expenses reasonably incurred in these efforts regardless of the outcome of each individual post-judgment effort involving litigation.

### B.

Appellants also contend that PMC counsel should be disqualified from representing first the PMC in its determinations of the merit of individual claims under section IX of the judgment and then those individual claimants determined to have meritorious claims in the presentation of their claims to the special master. Appellants assert that representation of both created a conflict of interest arising from a financial interest that PMC counsel had in inducing the PMC to make a finding of merit. Appellants base this contention upon the fact that fees are awarded to PMC counsel for its representation of every individual with a claim that the PMC deemed meritorious in the presentation of that claim to the special master. The only exception to this practice is that the special master will not award fees for litigation of an individual complaint that he does not consider to have been "reasonable."

The argument of appellants is that PMC counsel, by virtue of its job of advising the PMC in its initial merits determination of the claims of individuals, had the opportunity to convince the PMC of the merit of claims that were in fact non-meritorious and that it had the motivation to do so because it will receive fees for the litigation of all claims deemed meritorious by the PMC that it presented to the special master.[5] They contend that this situation makes disqualification appropriate under

---

**5.** The individual claimants, of course, had the option of picking counsel of their choice to present their claim to the special master whether or not the PMC deemed their claim meritorious. However, if they employed their own counsel, they would be reimbursed for attor-

neys' fees only if they won before the special master, whereas, if they were represented by PMC counsel, defendants will pay the attorneys' fees regardless of the outcome of the individual's claim before the master unless the master finds that the claim was not reasonable.

Disciplinary Rules 5–101 and 5–105 and Canon 9 of the Code of Professional Responsibility.

█ Disciplinary Rule 5–101[6] does not mandate disqualification here because the exception described above whereby the special master will not award fees for litigation of individual complaints that he does not consider to have been "reasonable" provides a check upon potential financial conflict. It served as a deterrent to the presentation of claims that were not worthy of being presented and might otherwise conceivably have been presented by PMC counsel solely for the purpose of obtaining attorneys' fees. As a result of this deterrent, it is unlikely that "the exercise of [PMC counsel's] professional judgment on behalf of [its] client [was] or reasonably [might have been] affected by [its] own financial, business, property, or personal interest." Code of Professional Responsibility DR 5–101(A). Furthermore, DR 5–101 is not applicable in this case because the PMC, at the very least, constructively consented to the representation of individual section IX claimants by PMC counsel since it was the PMC itself that offered the services of PMC counsel to these claimants for the presentation of their cases to the special master.

█ Disciplinary Rule 5–105[7] also presents no problem in the case at hand. DR 5–105 is concerned with the concurrent employment of a lawyer by multiple clients with conflicting or potentially conflicting interests. No such conflict is present here because PMC counsel did not represent those claimants found to have meritorious claims until after the appearance of the individual claimant before the PMC was completed. Thus, by the time PMC counsel began representing an individual claimant, the interests of the claimant and the PMC were not conflicting but concurrent; for, since the purpose of the PMC was the continuing enforcement of the judgment, after it had determined that an individual claim had merit, the interest of the PMC—like that of the claimant—was in seeing that the claim was successfully presented to the special master.

Finally, the test for disqualification of an attorney under Canon 9 is a two-pronged one:

> First, although there need not be proof of actual wrongdoing, "there must be at least a reasonable possibility that some specifically identifiable impropriety did in fact occur." ... Second, "a court must also find that the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case." ... "Under Canon 9, an attorney should be disqualified only when both of these standards have been satisfied." ...

*United States v. Hobson*, 672 F.2d 825, 828 (11th Cir.), *cert. denied*, 459 U.S. 906, 103

---

**6.** Disciplinary Rule 5–101 states in pertinent part:

**DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment**

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

**7.** Disciplinary Rule 5–105 states in pertinent part:

**DR 5–105. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer**

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

**1506**

S.Ct. 208, 74 L.Ed.2d 166 (1982) (quoting *Woods v. Covington County Bank*, 537 F.2d 804, 813 & n. 12 (5th Cir.1976)) (citations omitted).

 Neither prong of this test is satisfied here. There is neither "a reasonable possibility that some specifically identifiable impropriety did in fact occur" nor a more than minimal "likelihood of public suspicion" in this situation in light of the facts (1) that the PMC—not its counsel— made the final determination that a claim was meritorious and should be sent on to the special master and (2) that the special master must find that the litigation of a claim before him was "reasonable" before he will award attorneys' fees. Furthermore, what minimal likelihood of public suspicion may exist is not such as would "create a serious risk of undermining public confidence in the integrity of our legal system," *Hobson*, 672 F.2d at 828. This minimal likelihood is thus outweighed by the social interest to be served—namely:

(1) Lesser fees, and thus less cost to the government, were likely incurred when PMC counsel represented the individual claimants since PMC counsel was already familiar with the case from its presentation to the PMC.

(2) Individual claimants with claims that the PMC had deemed meritorious, but who might not have been willing or able to pay the cost of presenting their claims to the special master and risk not being reimbursed for this cost if they lost, or who might not have been able to find lawyers willing to present their claims in return for fees only in the case of victory, nevertheless presented their claims and thereby perhaps further vindicated those rights initially vindicated by the consent judgment since they bore no cost for representation by PMC counsel.

The awards of attorneys' fees to PMC counsel in this case are proper, and there are no grounds for a finding that PMC counsel has violated the Code of Professional Responsibility.

AFFIRMED.

HILL, Circuit Judge, concurring specially:

I concur. The consent decree placed the burden of these fees upon appellants. Having entered into, and joined in petitioning for the issuance of, the decree, appellants cannot escape its terms by arguing that it acted unwisely in the first instance.

Part IIB concerns me greatly. PMC counsel are offered a tempting "fountain of fees" derived from counseling its client, PMC, that a claimant's case is meritorious and, then, earning fees for representing the claimant before the special master and the court. Appellants were apparently most anxious to settle when that consent was presented to the court.

I see no reason to analyze the "prevailing party" issue towards the end of Part IIA; the consent decree is sufficient.