Loretta **ROLLAND**, et al., Plaintiffs,

v.

Argeo Paul **CELLUCCI**, et al., Defendants.

No. Civ.A. 98–30208–KPN.

United States District Court, D. Massachusetts.

July 23, 2001.

Richard D. Belin, Nima R. Eshghi, Foley, Hoag & Eliot, Boston, MA, Steven J. Schwartz, Cathy E. Costanzo, Northampton, MA, Stacie B. Siebrecht, Matthew Engel, Frank J. Laski, Christine M. Griffin,

Boston, MA, Thomas B. York, Dilworth Paxson LLP, Harrisburg, PA, for plaintiffs.

Peter T. Wechsler, Attorney General's Office, Boston, MA, Kristi A. Bodin, Office of Attorney General, Springfield, MA, Judith S. Yogman, Attorney General's Office, Government Bureau, Boston, MA, H. Gregory Williams, Attorney General's Office, Springfield, MA, Ginny Sinkel, Office of the Attorney General, Government Bureau, Boston, MA, for defendants.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFFS' MOTION FOR A SECOND AWARD OF ATTORNEYS' FEES AND COSTS (Docket No. 206)*

NEIMAN, United States Magistrate Judge.

Currently at issue is Plaintiffs' motion for a second award of attorneys' fees and costs. For the reasons which follow, the court will allow Plaintiffs' motion and award them $289,765 in fees and $28,247.10 in costs.

## I. Background

Plaintiffs, mentally retarded or developmentally disabled individuals living in nursing homes, filed this class action lawsuit in December of 1998. In January of 2000, the court approved a settlement agreement and on June 28, 2000, recognized Plaintiffs as prevailing parties in the case in chief and awarded them $1,112,171 in fees and costs. *See Rolland v. Cellucci*, 106 F.Supp.2d 128 (D.Mass.2000). An additional $9,135 in expert expenses was awarded on July 11, 2000, and another $70,500 was awarded to one of Plaintiffs' attorneys by agreement of the parties.

The court's resolution of the attorneys' fees and costs issue did not end the matter. As allowed by the parties' settlement agreement, other post-judgment efforts, including both "monitoring" and "enforcement," have ensued. One main effort in this regard was Plaintiffs' motion with respect to specialized services, which asked the court to (1) find that Defendants had not been substantially complying with portions of the settlement agreement which governs specialized services, (2) lift the stay imposed by the agreement with respect to specialized services, and (3) order Defendants to take certain remedial actions. On March 27, 2001, the court, having bifurcated the first two prayers from the third, entered a finding of substantial noncompliance and lifted the stay. That same day, the court denied a parallel motion for noncompliance concerning the diversion of class members from nursing homes.

Plaintiffs' present motion, filed on March 19, 2001, seeks an award of attorneys' fees for the time associated with securing the fees and costs awarded to them by the court on June 28, 2000. In addition to these "fees-on-fees," Plaintiffs' present motion seeks attorneys' fees and costs for monitoring and enforcing the settlement agreement through the end of 2000. In all, Plaintiffs seek $428,521.32, comprised of $389,925 in fees and $38,596.32 in costs. In response, Defendants assert that the court should award no more than half that total amount.

## II. Standard of Review

To determine a proper fee award, a court must necessarily "engage in a thoughtful analysis of the number of hours expended and the hourly rates charged to ensure both are reasonable." *Guckenberger v. Boston Univ.*, 8 F.Supp.2d 91, 100 (D.Mass.1998). *See also King v. Greenblatt*, 560 F.2d 1024, 1026–27 (1st Cir. 1977). In doing so, the court is obliged "to see whether counsel substantially exceeded

the bounds of reasonable effort." *United States v. Metro. Dist. Comm'n,* 847 F.2d 12, 17 (1st Cir.1988) (citation and internal quotation marks omitted). Typically, a court computes the lodestar "by ascertaining the time counsel actually spent on the case 'and then subtract[ing] from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary.'" *Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir.1992) (quoting *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984)). Then the court applies hourly rates to the various tasks, considering the prevailing community rates for comparable attorneys. *Id.* To say that a trial court mulling a fee request must fashion a lodestar, however, "is not to say that the court is in thrall to an attorney's time records." *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 (1st Cir.1997). The court, in its discretion, "can segregate time spent on certain unsuccessful claims, eliminate excessive or unproductive hours, and assign more realistic rates to time spent" and, ultimately, "may fashion a lodestar which differs substantially from the fee requested by the prevailing party." *Id.* (citations omitted).

## III. Discussion

Defendants do not contest Plaintiffs' right to seek fees incurred in successfully pursuing their first fee application. *See Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978). Nor do Defendants dispute that Plaintiffs are entitled to attorneys' fees and costs necessary to monitor and successfully enforce the settlement agreement. The approximately $200,000 difference between the parties' positions is explained by other disputes derived from the above standard of review: (1) whether the hourly rates sought are appropriate, (2) whether Plaintiffs' first fee application was, in fact, successful, (3) whether the time spent on that application was reasonable and necessary, (4) whether time spent on "unsuccessful" post-judgment efforts is compensable, (5) whether time spent on other post-judgment efforts was reasonable and, finally, (6) whether certain categories of costs which the court previously disallowed, should be reimbursed. The court addresses these issues seriatim.

## A. Hourly Rates

As indicated, to determine reasonable hourly rates, the court should consider "prevailing rates in the community for comparably qualified attorneys." *Lipsett,* 975 F.2d at 937 (1st Cir.1992). Using this standard, the court, in its initial fee opinion, adopted unified hourly rates for each of Plaintiffs' attorneys. *See Rolland,* 106 F.Supp.2d at 143. Neither party challenges that approach in the present context. Nonetheless, relying on "increases in the market, predictable cost of living factors, and additional years of experience," (Docket No. 208: Plaintiffs' Memorandum in Support of Their Motion for a Second Award of Attorneys' Fees and Costs ("Plaintiffs' Brief") at 13), Plaintiffs seek increased hourly rates for each attorney: $300 instead of the $250 previously set by the court for Steven Schwartz, $220 instead of $180 for Cathy Costanzo, $220 instead of $170 for Matthew Engel, and $270 instead of $240 for Richard Belin. Plaintiffs also seek $300 per hour for Frank Laski, for whom the court did not previously set a rate. The requested paralegal hourly rate of $100 for Joanne McLaughlin goes unchallenged, while Kathleen Eddy requests a paralegal rate of $30 instead of $25. Finally, Plaintiffs seek a $65 hourly paralegal rate for Marcia Boundy, who is described as "a trained and moderately experienced paralegal." (Docket No. 209: Plaintiffs' Exhibits, Volume I, Exhibit 3 ¶ 5.) As Plaintiffs them-

selves recognize, the requested rates "represent more than a minimal increase over the rates awarded by the Court last year." (Plaintiffs' Brief at 15 n. 4.)

In large part, the requested rates are tied to a scale revised by the Massachusetts Law Reform Institute ("MLRI") in September of 2000. The court cited MLRI's 1997 scale in its June 28, 2000 decision awarding fees. MLRI's present scale, Plaintiffs note, is practically identical to a fee scale adopted by the Massachusetts Attorney General's office on January 3, 2001. (See Plaintiffs' Exhibits, Volume I, Exhibit 10.)

In the court's view, the requested increases are not justified. Less than one year has passed since the court established the previous rates. *See Brewster v. Dukakis,* 3 F.3d 488, 493 (1st Cir.1993) (upholding rates applied by court in November of 1992 which were "the very figures adopted in 1991, the year in which much of th[e] work was done"). This short lapse in time hardly justifies rate increases based on greater experience or market forces. In this vein, the court notes that the Attorney General's fee scale was not adopted until January 3, 2001, after the work at issue here was performed. Moreover, despite the parties' diametrically opposed views of the court's previous decision regarding rates, the court remains content with its previous analysis.

Finally, and perhaps more importantly, the court does not believe that Plaintiffs' post-judgment efforts—consisting significantly of fee-related work—warrant higher rates than previously authorized. *See Brewster,* 3 F.3d at 494 (noting that since time spent on fee-related work "often amounts to little more than documenting what a lawyer did and why he did it, it may fairly be compensated at a reduced

rate") (citations and internal quotation marks omitted); *Grendel's Den, Inc.,* 749 F.2d at 958 (compensating fee-related work at a reduced rate). Moreover, with the exception of two court hearings, one on discovery and one on noncompliance, all of Plaintiffs' work during calendar year 2000 was out-of-court.

Accordingly, the court will maintain the rates previously applied to Schwartz ($250), Costanzo ($180), Engel ($170), Belin ($240), Eddy ($25) and McLaughlin ($100). These hourly rates, it should be noted, still compare favorably to recent rates set in this district. *See, e.g., Alfonso v. Aufiero,* 66 F.Supp.2d 183, 197 (D.Mass. 1999) (considering $250 a typical hourly rate for a senior private civil rights trial attorney); *Zurakowski v. D'Oyley,* 46 F.Supp.2d 87, 89 n. 2 (D.Mass.1999) ("deeming hourly rate of $240 reasonable where counsel was "one of the foremost" civil rights practitioners"); *Connolly v. Harrelson,* 33 F.Supp.2d 92, 95–96 (D.Mass.) (approving hourly rate of $200 in civil rights case for attorney with twenty-five years of experience), *aff'd,* 201 F.3d 426 (1st Cir.1999); *Wilson v. McClure,* 135 F.Supp.2d 66, 71 (D.Mass.2001) (awarding $250 per hour, not the requested $330 per hour, to "highly skilled civil rights attorney with years of experience and [who] is quite prominent within the Boston legal community"). The court will apply a rate of $250 to Laski, given his experience is comparable to Schwartz's. As to Boundy, who had been a paralegal for less than one year before she began working on this litigation, the court will apply a $30 per hour rate.[1]

## B. SUCCESS OF FIRST FEE APPLICATION

Defendants do not analyze in any detail the actual hours which Plaintiffs claim to

---

1. The rates applied by the court result in a $73,345 reduction in the total amount of fees claimed by Plaintiffs' attorneys at their requested rates.

have expended on their first fee application. Rather, Defendants argue that Plaintiffs had only "limited" success on that application and that their present fees-on-fees request should be reduced accordingly. Indeed, Defendants argue that an award of fees may actually be precluded by FED. R. CIV. P. 68, Defendants having made an offer of judgment not dissimilar to the amount of fees and costs adjudged payable.[2] (Unbeknownst to the court, Defendants, pursuant to Rule 68, had made Plaintiffs an offer of judgment with respect to fees and costs in the amount of $1,100,000 prior to the court's ruling on fees.) For the reasons which follow, the court finds neither argument convincing.

### 1. "Limited" Success?

■ Defendants' characterization of Plaintiffs' success on their first fee application as "limited" is not accurate. Of the $1,689,262 which Plaintiffs sought in fees and costs, they obtained $1,191,806. This amount includes the $1,112,171 awarded by the court on June 28, 2000, the additional $9,135 in expert expenses awarded on July 11, 2000, and the $70,500 awarded to one of Plaintiffs' attorneys by agreement of the parties. Still, Defendants argue that because Plaintiffs obtained approximately thirty percent less than what they were seeking, the court should deem their success "limited" and reduce the number of hours spent on that application by thirty percent as well.

Defendants' argument fails in both respects. First, there is no logical equivalence between the two thirty percent figures. It is by no means true that because Plaintiffs only achieved about seventy percent of the fees sought, only seventy percent of the hours spent on their fee application was reasonable. Only an analysis of Plaintiffs' time records can determine the reasonableness of the hours claimed. Second, in light of the figures mentioned, it can hardly be said that Plaintiffs' success was "limited." While the amount awarded might have been thirty percent less than the amount sought, it was more than twice the amount which Defendants argued ought to be awarded.

### 2. Rule 68

■ Alternatively, Defendants assert that the fees-on-fees award should be reduced to account for "[P]laintiffs' refusal to accept [D]efendants' reasonable offer for judgment on [P]laintiffs' first fee claim." (Docket No. 216: Memorandum in Opposition to Plaintiffs' Motion for Second Award of Attorneys' Fees ("Defendants' Brief") at

---

**2.** Rule 68 provides as follows:

At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

5.) This somewhat ingenious, if not ingenuous, argument has raised a number of procedural issues which the court has addressed in a separate memorandum and order issued this day. As to the substance of Defendants' assertion, that must be rejected.

As indicated, on January 26, 2000, shortly after Plaintiffs communicated their initial demand for attorneys' fees to Defendants' counsel, Defendants, relying on Rule 68, made an offer of judgment in the amount of $1,100,000. Defendants assert that, rather than accepting this offer, Plaintiffs spent several hundred additional hours litigating their claim for fees before obtaining an award of $1,121,306, only two percent more than Defendants' offer. "[C]onsidering the then-present value of accepting [D]efendants' offer in January 2000, rather than awaiting the Court's orders in June and July," Defendants now assert, the offer of judgment was "effectively more favorable than the Court's award, therefore requiring [P]laintiffs to bear their own post-offer fees and costs." (Defendants' Brief at 5 (internal quotation marks omitted).)

Even assuming that Rule 68 applies in this instance, *see Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1337 (4th Cir.1996) (noting that even though "Rule 68 may not require plaintiffs to bear their own post-offer attorney's fees[,] . . . courts may consider a plaintiff's refusal of a set-

tlement offer as one of the several proportionality factors guiding their exercise of discretion"), Defendants' argument fails in at least two ways. First, Defendants' offer of judgment must be compared, if it is to be compared at all, to the $1,191,806 in fees and costs ultimately obtained by Plaintiffs, not the $1,121,306 figure used by Defendants. As described, the bulk of the difference represents $70,500 in fees which the parties agreed, albeit after the court's orders of June 28 and July 11, 2000, were payable to an attorney with the Mental Health Legal Advisors' Committee ("MHLAC"). Using that higher figure, Plaintiffs actually obtained nearly eight percent, not two percent, more than Defendants had offered in judgment.[3]

Second, there is scant merit to Defendants' argument that—"considering the then-present value of accepting [D]efendants' offer in January 2000, rather than awaiting the Court's orders in June and July"—their offer was "effectively" more favorable than the court's award. Rule 68 stands for the proposition that courts should weigh offers for judgment and final judgments on their face. *See, e.g., Simon v. Intercontinental Transp.*, 882 F.2d 1435, 1440 (9th Cir.1989); *Bright v. Land O'Lakes, Inc.*, 844 F.2d 436, 443 (7th Cir. 1988). In the court's estimation, that proposition cannot be easily reconciled with Defendants' position regarding the "time value of money." *See Hensley v.*

---

**3.** Granted, as the court recognized in its June 28, 2000 ruling, the propriety of awarding attorney's fees to MHLAC, a state agency, was then under consideration by the Massachusetts Supreme Judicial Court. *See Rolland*, 106 F.Supp.2d at 144. That fact, however, does not support Defendants' present argument that, at the time they made their offer of judgment, they were in no position to pay MHLAC's fees and that their offer should not be construed as including such fees. Unfortunately for Defendants, there is nothing in their offer of judgment which limits it in any

such way. As Plaintiffs assert, the terms of Defendants' offer were unambiguous—"for attorney's fees, including all costs and expenses"—and made no mention of any exclusion of MHLAC's claimed fees. Offers of judgment are to be interpreted against those that draft them. *See Garrity v. Sununu*, 752 F.2d 727, 733 (1st Cir.1984) (holding that district judge "was entitled to construe ambiguities in the offer against the offeror lest the offeree be pressured into accepting what later turned out to be an unfavorable offer").

*Eckerhart,* 461 U.S. 424, 448–49, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring in part and dissenting in part).

In *Bright,* for example, the defendants submitted an offer for judgment of $225,000 before the plaintiff obtained a final judgment in the amount of $250,000 and before the defendants prevailed on a counterclaim in the amount of $23,391.09. *Id.* at 443. The Seventh Circuit noted that the plaintiff's award could be characterized as either $250,000 or $226,608.91 (the judgment for plaintiff less the judgment in counterclaim). *Id.* The latter figure was only $1,608.91, or less than one percent, more than the offer for judgment. Nonetheless, the court emphasized that "[e]ither amount is greater than the offer of judgment amount" and concluded that Rule 68's cost shifting provision did not apply. *Id.* More importantly for purposes here, the court rejected the defendants' argument that the "surprisingly close" distance between the offer and the final judgment required a reduction or the denial of the plaintiff's claim for post-offer costs, noting that the defendants had produced no authority in support of such a proposition. *See id.*

In a variant on the *Bright* defendants' argument, Defendants in the case at bar assert that the court should "consider [P]laintiffs' rejection of [Defendants'] offer as a factor in determining the reasonableness of time spent thereafter as have other courts in similar circumstances." (Defendants' Brief at 6.) Unwittingly, perhaps, Defendants cite to a string of cases in which the offers of judgment appear to have been higher than the final judgment. *See, e.g., Sheppard,* 88 F.3d at 1334; *Bumgardner v. Lite Cellular, Inc.,* 996 F.Supp. 525, 529 n. 4 (E.D.Va.1998); *Dalal v. Alliant Techsystems, Inc.,* 927 F.Supp. 1383, 1385 (D.Col.1996), *aff'd,* 182 F.3d 757, 759–60 (10th Cir.1999); *S.G.C. v. Penn–Charlotte Assocs.,* 116 F.R.D. 284, 286 (W.D.N.C.1987). Here, in contrast, the face value of Defendants' offer for judgment was lower than the final judgment, whether by two percent, as Defendants concede, or by nearly eight percent, as the court has found.

In any case, sound policy reasons favor a straightforward rather than a "time value of money" approach. Defendants' devaluation technique would inevitably plunge the court into a morass of practical problems including, but not limited to, the choice of which economic devaluation standard to employ (e.g., interest rates or inflation) and the application of the chosen rate to a short period of time, January to June of 2000. At bottom, the court finds that Plaintiffs' initial fee application was successful and that Rule 68 creates no bar to the award of reasonable fees for that effort.

### C. REASONABLENESS OF EFFORT EXPENDED ON FIRST FEE APPLICATION

Other than the arguments just addressed, Defendants offer no specific analysis of the reasonableness and necessity of the fees now requested by Plaintiffs with respect to their initial fee application. At best, Defendants estimate that approximately $90,000 worth of time, at Plaintiffs' requested rates, was spent on their previous fee application. Although Defendants offer scant analysis, the court itself, as indicated, is obligated to "engage in a thoughtful analysis of the number of hours expended ... to ensure [they] are reasonable." *Guckenberger,* 8 F.Supp.2d at 100.

Having reviewed the time records, the court deems all of the hours spent on Plaintiffs' first fee application to have been reasonable. As best the court can determine, Plaintiffs' request of approximately $90,000 can be divided as follows: Schwartz—$36,600 (122 hours at a claimed

$300 per hour), Costanzo—$26,400 (120 hours at $200 per hour); Engel—$5,500 (25 hours at $220 per hour); Belin—$13,500 (50 hours at $270 per hour); Laski—$4,200 (14 hours at $300 per hour); and McLaughlin—$3,100 (31 hours at $100 per hour). Applying the lower hourly rates selected by the court, the court will award a total of $74,950 in fees on the fees-on-fees issue, divided as follows: Schwartz ($30,500), Costanzo ($21,600), Engel ($4,250), Laski ($3,500), Belin ($12,000) and McLaughlin ($3,100).

### D. COMPENSABILITY OF "UNSUCCESSFUL" POST-JUDGMENT EFFORTS

Although Defendants do not contend that time spent on post-judgment enforcement activities are noncompensable per se, they do assert that at least two unsuccessful post-judgment motions ought not be compensated. Accordingly, Defendants argue, at least impliedly, that unsuccessful "enforcement" efforts, as distinct from "monitoring" efforts, may not be recovered as a matter of law.

#### 1. "Monitoring" Versus "Enforcement"

■ The parties agree that reasonable post-settlement "monitoring" efforts are compensable. *See Garrity*, 752 F.2d at 738–39. This agreement, however, is more easily achieved by the parties than implemented by the court. As the First Circuit has recognized, assessing fees for post-judgment monitoring is often complex:

> We appreciate the fact that devising workable ways, fair to performer and payor, to compensate · legal services during the formative period (following issuance of a complex system-creating decree and before satisfactory implementation becomes largely routine) is a difficult and sensitive task. The services are of lower profile and often of a more routinized nature than services

preceding judgments. Missing the refining fire of the basic litigation, plaintiffs' attorney may slip into a mode of spending too much time on too many matters with the result that the decree institutionalizes the attorney, as well as the system.

*Brewster v. Dukakis,* 786 F.2d 16, 18 (1st Cir.1986). That said, the First Circuit rejected the defendants' attempt in *Brewster* to limit post-judgment fees "only where a substantial issue arises as to the defendants' obligations under the decree, and the work of plaintiffs' counsel yields a resolution more favorable to the class than the defendants were prepared to concede." *Id.* The court decided instead that the "reasonable monitoring" test set in *Garrity* controlled. *See id.* at 19. *See also Northcross v. Bd. of Educ.,* 611 F.2d 624, 637 (6th Cir.1979) ("Services devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working . . ., are compensable services.")

The present matter presents a significant issue which appears not to have been fully addressed in either *Brewster* or *Garrity*. Plaintiffs not only seek fees for "monitoring" the implementation of the settlement, but "enforcing" it as well. While the exact parameters of those two efforts may at times be unclear, the distinction is evident in the case at bar. Indeed, Plaintiffs themselves recognize the distinction. In support of their motion, Plaintiffs argue that, "[u]nfortunately for classmembers," their attorneys "have not been able to spend almost any time monitoring the implementation of the Agreement nor assisting classmembers in nursing facilities to secure the community placement or specialized services to which they are entitled." (Plaintiffs' Brief at 6.) Instead, Plaintiffs continue, "almost every hour spent by . . . [P]laintiffs' attorneys during

2000 had to be directed to *enforcing* specific provisions of the Agreement because the defendants had failed, on their own, to comply with their legal obligations." *Id.* (emphasis in original)

In the court's opinion, this practical distinction between monitoring and enforcement has legal significance as well. To the extent the settlement agreement created a monitoring role for Plaintiffs, Defendants, in essence, have agreed that Plaintiffs are entitled to attorneys' fees for all monitoring efforts reasonably related to the settlement. However, although Defendants concede that enforcement, like monitoring, may be compensable, they argue that such efforts, in the words of the Supreme Court, "must be 'useful and of a type ordinarily necessary to secure the final result obtained.'" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 561, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (citation and internal quotation marks omitted). Accordingly, Defendants assert, time spent by Plaintiffs on unsuccessful post-judgment motions ought not be compensated.

In opposition, Plaintiffs maintain that there is no meaningful distinction between monitoring and enforcement. Plaintiffs also contend that, given their ongoing responsibility to both monitor and enforce the settlement agreement, the outcome of such efforts is not determinative of whether a further fee award is appropriate. For the reasons which follow, the court does not agree.

The settlement agreement (Docket No. 115) draws a relatively clear line between monitoring and enforcement. At a minimum, monitoring may be said to include Plaintiffs' consultation with Defendants regarding the diversion plan, (*id.* ¶ 12), reviewing periodic reports regarding specialized services (*id.* ¶ 18) and community residential supports (*id.* ¶ 24(a)), and con-

sulting with Defendants regarding the appointment of a senior staff coordinator (*id.* at ¶ 25). Enforcement, on the other hand, is governed by a separate set of requirements, particularly paragraph thirty-two.

In the court's opinion, an enforcement motion under paragraph thirty-two is akin to a new action, even though a new complaint is not required. Under paragraph thirty-two, Plaintiffs are authorized to seek "a judicial determination that Defendants [were] not substantially complying with the Agreement." (*Id.* ¶ 32.) "If the court so finds," paragraph thirty-two continues, "it may lift the stay imposed under paragraph 28, and the Plaintiffs may seek injunctive and other relief based upon the then existing facts and law." (*Id.*) The remedy provided by paragraph thirty-two is only available after Plaintiffs become convinced that Defendants are not properly implementing the agreement and mediation efforts prove unavailing.

Given this procedure, the court believes that, once a motion is filed under paragraph thirty-two and barring a settlement on the particular issue, Plaintiffs must prevail in either lifting the stay or obtaining further relief in order to receive attorneys' fees for that effort. An unsuccessful motion cannot be compensated. This approach is justified by both the settlement agreement itself and the Supreme Court. *See Hensley,* 461 U.S. at 435, 103 S.Ct. 1933 ("The congressional intent to limit awards to prevailing parties requires that . . . unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.") *See also Plyler v. Evatt,* 902 F.2d 273, 281 (4th Cir.1990) ("The initial status of 'prevailing party' does not entitle [plaintiffs] to compensation when [efforts regarding] modification [of a consent decree are] unsuccessful and the position taken was not essential

to the preservation of the integrity of the consent decree as a whole.")

At bottom, as long as Plaintiffs pursue matters without court intervention, their reasonable efforts may be compensated. If they seek court intervention via a paragraph thirty-two motion and prevail, that effort too is compensable. If, however, Plaintiffs unsuccessfully seek such court intervention, that effort is not compensable, particularly when it does not present "a common core of facts" to successful claims independently pursued. *See Hensley*, 461 U.S. at 435–36, 103 S.Ct. 1933.

Plaintiffs' arguments to the contrary are unavailing. First, the court does not believe that the First Circuit's decision in *Brewster* calls for a different conclusion. In accord with *Brewster*, this court has and will allow fees for post-judgment monitoring without requiring Plaintiffs to demonstrate that they "prevailed" in that effort. Following *Brewster*, the court does not wish to "stimulate posturing and undercut the amicable cooperation that a consent decree is designed to foster." *Id.* 786 F.2d at 18.

The First Circuit, however, has been relatively silent on the compensability of "enforcement" efforts, at least of the type discussed here. For example, in *Brewster*, the First Circuit simply noted that the defendants did not challenge District Judge Frank H. Freedman's award of fees to the plaintiffs with respect to three unresolved motions for contempt. These motions, which may be equated to an enforcement effort, were "all settled before hearing," Judge Freedman having found "that the efforts helped produce favorable results." *Id.* at 17.[4] In this vein, the

First Circuit court noted as well, however, that Judge Freedman did *not* compensate the plaintiffs' attorneys for their "unsuccessful defense on appeal of a legal services program ordered by the district court." *Id.* at 18.

The other cases cited by Plaintiffs are similarly unavailing. For example, *Duran v. Carruthers*, 885 F.2d 1492 (10th Cir. 1989), only addressed the defendants' objection to the award of fees for the plaintiffs' monitoring, not enforcement, efforts. Citing with approval Judge Freedman's decision in *Brewster v. Dukakis*, 544 F.Supp. 1069, 1072 (D.Mass.1982), the Tenth Circuit approved the very type of compensable monitoring activities to which Defendants here pose no objection. *Duran*, 885 F.2d at 1496. With respect to the "enforcement" efforts, in the form of a motion for contempt, the Tenth Circuit simply noted both that the defendants raised no objection to its compensability and that, in any case, the parties settled the issue. *See id.* Again, such circumstances do not present themselves here.

The Eleventh Circuit's decision in *Turner v. Orr*, 785 F.2d 1498 (11th Cir.1986), is distinguishable as well. The *Turner* court's finding that fees were payable for post-judgment enforcement, whether or not such enforcement efforts were successful, was grounded in the particular terms of the then operative consent decree. *See id.* at 1500. That decree specifically provided that the defendants were not only required to pay reasonable attorneys' fees for services rendered the class, but to "also reimburse plaintiffs for ... the expenses reasonably incurred or to be incurred by the plaintiffs' Monitoring Com-

---

4. The parties have not had the opportunity to argue and the court does not opine how this particular issue would be considered in light of the Supreme Court's recent rejection of the catalyst theory of recovery of attorney's fees in *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, —— U.S. ——, 121 S.Ct. 1835, 149 L.Ed.2d 855 (May 29, 2001).

mittee in carrying out its duties under the[e] [j]udgment." *Id.* at 1500 n. 2. Those duties included the right to appeal to the court adverse determinations by a special master. *See id.* at 1500 n. 3. No such provision presents itself in the case at bar. Defendants here only agreed that Plaintiffs were "entitled to reasonable attorneys' fees for work performed prior to the approval of th[e] Agreement." (Settlement Agreement ¶ 34.)

Finally, in the court's estimation, the Fourth Circuit's decision in *Plyler* supports rather than undermines the approach taken here. As the Fourth Circuit explained, "[t]he question is whether the nature of the post-decree litigation warrants a separate analysis of the otherwise established 'prevailing party' status." *Id.*, 902 F.2d at 280. "If treatment as a separate lawsuit is appropriate," the court continued,

> then a party who may have "crossed the threshold" to become the "prevailing party" in the main action would in essence lose that status with respect to the separate claims or proceedings. The Supreme Court has directed district courts not to draw overly fine distinctions in making this determination. Certainly, where the issues presented in the later proceedings or in separate claims involve the same common core of facts or related legal theories, the case "cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." [*Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.] Ultimately, determinations of relatedness of claims and the quality of the overall results are not

reached through any precise rules or formulae, but rather through an equitable judgment of the district court exercising discretion in light of the concerns expressed in *Hensley.*

*Id.*

In sum, the court believes that the settlement agreement in the present matter draws a clear line between monitoring and enforcement. To the extent that the agreement does not provide for attorneys' fees for enforcement—which, again, commences when a motion is filed under paragraph thirty-two—such effort by its very nature must be successful—either in lifting the stay or obtaining injunctive or other relief—in order to be compensable. Unless other arguments hereafter present themselves, the court does not believe that an effort which fails in either respect should be compensated.

### 2. *Application*

With these standards in mind, the court has determined that Plaintiffs have prevailed with respect to the first two prayers of their paragraph thirty-two motion regarding specialized services: that Defendants were not substantially complying with the agreement and the stay should be lifted. Accordingly, Plaintiffs will receive fees for these efforts.[5]

However, Plaintiffs' parallel effort with respect to diversion is not compensable, the court having denied Plaintiffs' paragraph thirty-two motion in that regard. Thus, after scrupulously reviewing Plaintiffs' attorneys' time records, the court finds that the following hours expended by the following attorneys on the diversion motion are not eligible for recovery:

---

**5.** Further fees, if any, with respect to the third prayer will have to await final resolution of that request.

Schwartz (3.5 hours), Costanzo (17.0 hours) and Engel (1.0 hours).[6]

Finally, Defendants argue that Plaintiffs' unsuccessful motions to strike (Docket No. 187) and for a continuance (Docket No. 185) ought not be compensated, even though they were part of Plaintiffs' otherwise successful effort regarding specialized services. The court agrees. To the extent both motions were discrete and unsuccessful, they are not compensable. *See Hensley,* 461 U.S. at 435–36, 103 S.Ct. 1933. The court has reviewed the time records and has determined that the following hours are not compensable in this regard: Schwartz (4.0), Costanzo (.5) and Belin (2.0). Adding these hours to the hours found non-compensable for the diversion motion, Schwartz's hours will be reduced by a total of 7.5 (3.5 plus 4), Costanzo's hours will be reduced by 17.5 (17.0 plus 0.5), Engel's hours will be reduced by 1.0, and Belin's hours will be reduced by 2.0.

E. *REASONABLENESS OF OTHER POST-JUDG-MENT EFFORTS*

■ Defendants also maintain that Plaintiffs spent an unreasonably large amount of time on other post-judgment activities. In particular, Defendants assert (1) that Plaintiffs' reliance on post-judgment discovery and experts was unnecessary and (2) that Plaintiffs spent time on excessive or duplicative efforts.

As to Defendants' first assertion, the court does not find that Plaintiffs' reliance on post-judgment discovery and experts was unnecessary or inappropriate. Al-

though, as Defendants point out, the court's decision on Plaintiffs' motion for further relief concerning specialized services was based, for the most part, on Defendants' own figures, it does not follow that Plaintiffs' discovery efforts were fruitless. The court's decision to bifurcate Plaintiffs' motion for further relief could not reasonably have been foreseen. Moreover, Plaintiffs' evidentiary proffer provided an appropriate background to the court's consideration of the motion. As Defendants are well aware, the first part of Plaintiffs' motion has been successful. *See Rolland v. Cellucci,* 138 F.Supp.2d 110 (D.Mass.2001).

Defendants' second assertion, however, has merit. As a result, the court will reduce the remaining compensable hours by ten percent to account for excessive hours and duplication of effort. *See Gay Officers Action League v. Commonwealth of Puerto Rico,* 247 F.3d 288, 295–96 (1st Cir.2001); *Yankee Candle Co. v. Bridgewater Candle Co.,* 140 F.Supp.2d 111, 125 (D.Mass.2001). There are two reasons for this reduction: excessive time in multiple attorney conferences and the use of attorneys in lieu of paralegals for certain efforts.

As Defendants point out at pages ten through fifteen of their memorandum, Plaintiffs' time records reveal a duplication of effort. In addition, it appears that many of the out-of-court tasks performed by Plaintiffs' attorneys during this period—including making arrangements for expert tours and accompanying experts on

---

**6.** To be sure, Plaintiffs' motion for fees was silent on diversion. This silence is easily attributable to the fact that the court's March 27, 2001 ruling on diversion post-dates the instant motion for fees which was filed on March 19, 2001. However, Plaintiffs' reply brief, filed on April 24, 2001, ignored the court's disposition on diversion as well. As a result, the court assumed that Plaintiffs be-

lieved that all post-judgment enforcement efforts, even unsuccessful ones, were compensable. The court's assumption was confirmed when, in response to its inquiry during the course of another hearing on June 8, 2001, Plaintiffs filed a supplemental memorandum (Docket No. 237) asserting that, indeed, even unsuccessful enforcement efforts are compensable.

such tours, for which Plaintiffs' attorneys themselves claim approximately 153 hours [7]—could have been done by paralegals. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (noting that dollar value of paralegal, secretarial or clerical work "is not enhanced just because a lawyer does it") (citation and internal quotation marks omitted). *See also Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir.1995) (disallowing compensation at attorney's rate of $200 for escorting experts on site visits and questioning compensation at the paralegal rate of $60 per hour for this purpose).[8]

In making this decision, the court acknowledges Plaintiffs' attorneys' representations that, in the exercise of billing judgment, they deleted time which they believed to be excessive, unnecessary or otherwise not properly chargeable. For example, Schwartz avows that he deleted approximately ten hours spent on monitoring and implementation activities, ten hours involving meetings or communications with other attorneys or paralegals, and fifteen hours related to the enforcement of specialized services; Costanzo asserts that she eliminated approximately sixty-five hours spent on the case; and Belin avows that he eliminated all time spent by other attorneys and professionals in his firm, resulting in a $13,265 reduction in fees sought at reduced hourly rates. Nevertheless, for the reasons stated, the court believes that a further ten percent paring of attorney's fees, as distinct from paralegal fees, is necessary. This adjustment is applied to post judgment efforts exclusive of the time spent on Plaintiffs' original fee request.

### F. FEE CALCULATIONS

The court's attorney fees calculations can be summarized in the attached Appendix. In total, the award is for $289,765 in fees.

### G. COSTS

Plaintiffs seek $38,596.32 in costs and expenses. Most of these costs, $28,247.10, involve the types of expenses previously approved by the court, *see Rolland,* 106 F.Supp.2d at 145, and, therefore, will be allowed. The remainder, which Plaintiffs separately list in Exhibit 2, represents the types of expenses which the court previously disallowed. Nonetheless, Plaintiffs assert that these expenses "are generally allowed by most courts as reasonable litigation costs." (Plaintiffs' Brief at 15.) Although Plaintiffs acknowledge that "[c]learly not every expense is regularly charged to a client," including regular

---

7. Comprised as follows: Schwartz (24.3 hours), Costanzo (87 hours) and Engel (41.75 hours). (See Plaintiffs' Exhibits, Volumes II and III, Exhibits 11–13.)

8. The court is also concerned about charges for travel time. As was true when they filed their first fee application, Plaintiffs avow that all travel was billed at half the actual time spent in order to reflect an effective travel rate of half the regular rates. Plaintiffs' execution of this policy, however, appears ineffective. For example, Mr. Schwartz charged for the full one-half hour it takes to travel "from Newton to Boston" on January 19, 200, January 24, 2000, August 14, 2000 and August 24, 2000. In contrast, this same one-half hour was properly charged for a trip "from Newton to Boston and back" on March 15, 2000. It may well be that the first four entries were meant to cover round trips as well, but the time records do not reflect that fact. The same problem arises in Ms. Costanzo's entries for trips between Northampton and Springfield on October 19 and December 4, 2000. Compare as well Ms. Costanzo's travel entries for one-half trips between Northampton and Boston on March 14, 2000 (1.3 hours and 2.8 hours). Because these may well be both minor and explainable errors, the court has made no adjustment.

postage, local and even some long distance telephone calls, local travel, incoming faxes, equipment rentals and secretarial services, (id. at 17 n. 7), they assert that the other costs requested should be reimbursed. (See *id.* at 17.)

The court maintains its position that the remaining expenses—here totaling $10,349.22—are unrecoverable overhead. *See Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir.1983); *Powell v. Control Data Corp.,* 1985 WL 9368, at *2 (D.Kan. April 22, 1985). These include, as applicable in this particular case, telephone conference calls, travel, overnight postage delivery, facsimiles and copying variously incurred by the three entities representing Plaintiffs.

## IV. CONCLUSION

For the reasons stated, Plaintiffs' motion is ALLOWED as follows: Defendants shall forthwith pay Plaintiffs attorneys fees of $289,765 and costs of $28,247.10.

IT IS SO ORDERED.

## APPENDIX

| Advocate (Total Hours Claimed) | * Fee on Fee Hours Claimed · Other Post–Judgment Hours Claimed | Deductions | Hours Allowed | Hourly Rate | Sub Totals | Amounts Due |
|---|---|---|---|---|---|---|
| Mr. Schwartz (496.6) | 122 374.6 | 0 −7.5; then −10% | 122 330.39 | $ 250 250 | $30,500 82,597 | $ 113,097 |
| Ms. Costanzo (584.2) | 120 464.2 | 0 −17.5; then −10% | 120 402.03 | 180 180 | 21,600 72,365 | 93,965 |
| Ms. Eddy (224.8) | —— 224.8 | — 0 | — 224.8 | — 25 | — 5,620 | 5,620 |
| Ms. Boundy (295.7) | — 295.7 | — 0 | — 295.7 | — 30 | — 8,871 | 8,871 |
| Mr. Engel (199.7) | 25 174.7 | 0 −1.0; then −10% | 25 156.33 | 170 170 | 4,250 26,576 | 30,826 |
| Mr. Laski (26.8) | 14 12.8 | 0 −10% | 14 11.52 | 250 250 | 3,500 2,880 | 6,380 |
| Mr. Belin (78.6) | 50 28.6 | 0 −2.0; then −10% | 50 23.94 | 240 240 | 12,000 5,746 | 17,746 |
| Ms. McLaughlin (132.6) | 31 101.6 | 0 0 | 31 101.6 | 100 100 | 3,100 10,160 | 13,260 |

$ 289,765