ROSIE D., by her parents JOHN and Debra D., et al, Plaintiffs

v.

Mitt ROMNEY, et al, Defendants.

Civil Action No. 01–30199–MAP.

United States District Court,
D. Massachusetts.

Feb. 22, 2007.

Cathy E. Costanzo, Steven J. Schwartz, Northampton, MA, Frank J. Laski, Mental Health Legal Advisors Committee, James C. Burling, John Sup Rhee, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for Plaintiffs.

Bart Q. Hollander, Office of the General Counsel, Timothy M. Jones, Mass. Attorney General's Office, Springfield, MA, Daniel J. Hammond, Deirdre Roney, Stephanie S. Lovell, Juliana Dehaan Rice, Attorney General's Office, John R. Hitt, Cosgrove, Eisenberg & Kiley, PC, Adam Simms, Pierce, Davis & Perritano, LLP, Boston, MA, for Defendants.

Robert H. Weber, Newton Highlands, MA, pro se.

### MEMORANDUM AND ORDER REGARDING REMEDY

PONSOR, District Judge.

This lawsuit has been brought on behalf of a class of Medicaid-eligible children suffering from serious emotional distur-

bances. It charges the Governor of the Commonwealth of Massachusetts and certain executive officials with violation of the federal Medicaid statute.

On January 26, 2006, the court issued its decision on liability, finding that Plaintiffs had convincingly demonstrated violations of two portions of the Medicaid statute: the provision mandating "early and periodic screening, diagnostic, and treatment services" ("EPSDT"), 42 U.S.C. §§ 1396a(a)(10)(A),-(a)(43), 1396d(r)(5),-(a)(4)(B) (2005), and the "reasonable promptness" provision, § 1396a(a)(8)(2005). Following this court's decision on liability, the parties voluntarily engaged in negotiations extending over several months in an effort to craft a remedy for these violations acceptable to both sides.

When they were unable to reach an agreement, the parties submitted their separate proposed remedial plans. Memoranda were submitted thereafter detailing the areas of disagreement between the parties. The court heard argument on December 12, 2006.

■ Having now had an opportunity to review both plans and to consider the parties' arguments, the court will adopt Defendants' proposed plan, subject to the provisos set forth below. Recognizing that the provision of adequate services for this extremely needy population of children presents a complex and daunting challenge and that no plan (neither Plaintiffs' nor Defendants') can guarantee an ideal level of service, the court is convinced that Defendants' plan has been offered in good faith and presents a "real prospect" for curing the Medicaid violations found by the court "at the earliest practicable date." *Green v. County Sch. Bd. of New Kent County, Va.*, 391 U.S. 430, 439, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968). Apart from its potential efficacy, adoption of Defen-

dants' plan has two special advantages, one legal and one practical.

■ First, as a legal matter, a respect for the sovereignty of the Commonwealth and the competence of its officials requires the court to allow the state to demonstrate that its chosen remedial plan will address, promptly and effectively, the Medicaid violations identified by the court. The Supreme Court has emphatically underlined the obligation of the court to defer to the judgment of state authorities in fashioning remedial orders and to avoid excessive intrusiveness. *Lewis v. Casey*, 518 U.S. 343, 362, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Of course, deference is not infinite; the court will not be obliged to close its eyes to unreasonable delays or inadequate measures. If the plan proves to be ineffective, Plaintiffs will be free to propose, and the court free to consider, alternative approaches.

Second, as a practical matter, there is some force in being able to say to Defendants: you have endorsed this plan, now implement it; prove to the court that it will work. Undue delay or ineffective programming will not be excused by complaints that Defendants are being forced to implement a plan they never bought into.

Most importantly, the plan, which is attached to this memorandum as Exhibit A, is a good effort and is promising. It is detailed and directly addresses each of the areas of deficit identified by the court in its January 26, 2006 memorandum. Defendants have estimated that implementation of the plan, assuming that it reaches at least 15,000 eligible children (and it may well extend to many more), will involve expenditures of up to $459 million, well more than twice the budgeted amount currently allocated for behavioral health services for this class of children. If implemented and successful, the plan will represent a new day for this population of

underserved, disabled children. It holds the potential to be an enormous step forward.

The court's adoption of Defendants' plan as its remedial order is subject to four provisos. To the extent that any language in Defendant's proposal is inconsistent with them, these provisos will govern and constitute a portion of the court's remedial plan.

First, since the Medicaid statute does not itself define a child suffering from a "serious emotional disturbance" ("SED"), the governing definition for an eligible SED child under the remedial plan will be the definition set forth in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401(3)(A)(i) and its implementing regulations *or* the definition set forth in the regulations governing the Substance Abuse and Mental Health Services Administration ("SAMHSA") of the United States Department of Health and Human Services.[1] Any child satisfying the SED criteria used in the IDEA *or* by SAHMSA, or both, will be eligible for services. While, of course, Defendants will be free to make clinical decisions based on the needs of the individual children, no language in Defendants' proposed plan (if any) appearing categorically to narrow the definition of class of children eligible for services will have any force or effect. It is worth noting that Defendants disavow any narrowing of the class of eligible children under their proposal, beyond what is set out in the IDEA or by SAHMSA. This proviso clarifies that point.

Second, timelines for implementation of the plan are set forth below. These timelines constitute a portion of the remedial order and will be subject to enforcement by the court. They are, however, also subject to modification for good cause upon application by any party.

Third, as an order of the court, the substantive terms of the remedial plan are mandatory and may not be modified unilaterally at the discretion of Defendants. Absent a modification agreed to by the parties, or permitted for good cause by the court, the plan is to be implemented according to its terms.

Fourth, the remedial plan will be embodied as a final order of judgment, subject to the court's exercise of ongoing jurisdiction to insure the implementation of the plan. Defendants have indicated that they "request an opportunity to submit a proposed form of judgment" (Ex. A, at 1) consistent with the plan. The timetable set forth below will give Defendants an opportunity to do this and Plaintiffs an opportunity to respond.

The timelines for implementation of Defendants' plan (subject, as already noted, to modification for good cause upon application to the court), based on Section VI of Defendants' proposal, are as follows:

1. *PROJECT 1: Behavioral Health Screening, Informing and Noticing Improvements.*

Defendants will submit to the court a written report on the implementation of Project 1 no later than June 30, 2007. Completion of this project will be by December 31, 2007.

2. *PROJECT 2: Assessment, Development, Training and Deployment.*

Defendants will submit to the court a preliminary report with regard to the completion of Project 2 no later than November 30, 2007. Completion of this project will be by November 30, 2008.

---

**1.** Notice, Substance Abuse and Mental Health Services Administration, 58 Fed.Reg. 29422– 02 (May 20, 1993), available at 1993 WL 167366.

3. *PROJECT 3: Development of a Service Delivery Network.*

Defendants will submit to the court a written report with regard to completion of Project 3 no later than November 30, 2007. Further status reports thereafter may be required. Full implementation of this project will be completed by June 30, 2009.

4. *PROJECT 4: Information Technology Systems Design and Development.*

Defendants will submit to the court a written status report with regard to Project 4 no later than November 30, 2007. Full completion of this project will be by November 30, 2008.

5. *COURT MONITOR.*

The parties will report to the court, in writing, no later than March 23, 2007 regarding their efforts to agree upon a court monitor to oversee implementation of the remedial plan. If they agree on a monitor, the name of this party, along with the proposed monitor's *curriculum vitae* and a budget, will be submitted at that time.

In the event that the parties are unable to agree on a court monitor, each side will submit a list of three names, along with the *curriculum vitae* of each, no later than April 6, 2007. The court will thereafter select a court monitor from the proposed names. At the time the names are submitted, the parties will also submit a proposed budget for the court monitor.

Defendants will, as they have requested, submit a proposed form of judgment embodying the remedial plan adopted by the court, no later than March 23, 2007. Plaintiffs may submit a written response to this submission no later than April 6, 2007.

It is So Ordered.