**ROSIE D., et al, Plaintiffs**

v.

**Deval L. PATRICK, et al, Defendants.**

**Civil Action No. 01–30199–MAP.**

United States District Court,
D. Massachusetts.

July 16, 2007.

James C. Burling, Wilmer Cutler Pickering Hale and Dorr LLP, Frank J. Laski, Mental Health Legal Advisors Committee, Boston, MA, Cathy E. Costanzo, Steven J.

---

Schwartz, Northampton, MA, for Plaintiffs.

Daniel J. Hammond, Juliana deHaan Rice, Stephanie S. Lovell, Deirdre Roney, Attorney General's Office, John R. Hitt, Cosgrove, Eisenberg & Kiley, PC, John Sup Rhee, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Bart Q. Hollander, Office of the General Counsel, Timothy M. Jones, Mass. Attorney General's Office, Springfield, MA, for Defendants.

## MEMORANDUM AND ORDER REGARDING JUDGMENT

PONSOR, District Judge.

This is a lawsuit brought under the Medicaid statute on behalf of a class of children suffering from serious emotional disturbances ("SED"). On January 26, 2006, the court found that Plaintiffs had proved "by far more than a fair preponderance of the evidence" that Defendants had failed to comply with the statute's provision mandating early and periodic screening, diagnostic, and treatment services ("EPSDT"), 42 U.S.C. §§ 1396a(a)(10)(A) and (a)(43), and §§ 1396d(r)(5) and (a)(4)(B), as well as its "reasonable promptness" provision, 42 U.S.C. § 1396a(a)(8). *See Rosie D. v. Romney*, 410 F.Supp.2d 18, 23 (D.Mass.2006).

As part of its decision on liability, the court ordered the parties to confer and attempt to develop a joint remedial plan. This effort consumed several months and resulted in some progress towards an agreed resolution, but was ultimately unsuccessful. As a result, the parties submitted separate memoranda offering their own versions of a final remedial order. The court heard argument on this issue on December 12, 2006.

On February 22, 2007, the court issued its memorandum and order, adopting Defendants' proposed plan and issuing it as the court's remedial order, subject to four provisos. *See Rosie D. v. Romney*, 474 F.Supp.2d 238 (D.Mass.2007). These provisos were, in summary: (1) that all Medicaid-eligible children suffering from a "serious emotional disturbance" under the definition used *either* in the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401(3)(A)(i) *or* by the Substance Abuse and Mental Health Services Administration ("SAMHSA") would be eligible for services under the court's remedial plan; (2) that the time lines for implementation of the remedy constituted a court order subject to modification only for good cause; (3) that no provision of the remedial plan could be unilaterally altered by Defendants but might be modified upon agreement of the parties or by order of the court; and (4) that the remedial plan would be embodied as a final order of judgment "subject to the court's exercise of ongoing jurisdiction to insure the implementation of the plan." *Id.* at 240.

On March 23, 2007, Defendants submitted their proposed judgment. (*See* Dkt. No. 356.) On April 6, 2007, Plaintiffs filed their opposition to it, Dkt. No. 359, arguing that the final judgment as proposed by Defendants differed from the remedial order as adopted by the court in essentially two respects. First, Plaintiffs pointed to what they considered to be dilutions from and additions to Defendants' initial proposed remedy in their proposed final judgment. Second, and more importantly, Plaintiffs contended that the proposed final judgment failed to modify Defendants' initial proposed remedial order to incorporate the four "provisos" set down by the court and summarized above. As an alternative to Defendants' proposed final judgment, Plaintiffs submitted their own version, which, they argued, constituted a fairer embodiment of the remedial order

adopted by the court.[1] Defendants have responded that any textual changes between their original proposed remedial order as adopted by the court and their more recent proposed judgment were *not* intended to vary the terms of the remedial order and *were* intended to respect fully and to incorporate entirely the provisos laid down by the court.

Having now had an opportunity to consider the parties' positions, the court will issue the proposed judgment offered by Defendants, but with certain modifications.

Perhaps the most vigorous objection offered by Plaintiffs to Defendants' proposed judgment pertains to Paragraphs 17 and 18, entitled "Clinical Criteria for Intensive Care Coordination." This dispute is the latest manifestation of an ongoing difference of opinion between Plaintiffs and Defendants over the question of eligibility criteria for services under the court's remedial plan.

Defendants concede that a class member's eligibility for services under the court's remedial order and ultimate judgment must be based upon the definition of "serious emotional disturbance" as set forth in the IDEA, or as used by SAMHSA. They also agree, at least implicitly, that the "clinical criteria" set forth in Paragraphs 17 and 18 of their proposed judgment considerably narrow the population of SED children eligible for Intensive Care Coordination, a central feature of the court's remedial plan. Defendants contend, however, that the criteria set forth in Paragraphs 17 and 18 are not intended to narrow eligibility for services but merely to "guide" the clinical definition of when Intensive Care Coordination is "medically necessary," as part of what the court has

recognized as Defendants' discretion to make "clinical decisions based on the needs of individual children ...." 474 F.Supp.2d at 240.

Plaintiffs counter by emphasizing the court's commandment that no language in the remedial plan or judgment "appearing categorically to narrow the definition of the class of children eligible for services will have any force or effect." *Id.*

Plaintiffs are concerned that the "clinical criteria" in Paragraphs 17 and 18 of Defendants' proposed judgment will substantially reduce the population of SED children ultimately eligible to receive services under the remedial order. The phrasing of Defendants' proposed judgment creates an ambiguity that might permit the clinical criteria to undermine the remedial order's broader eligibility standards.

The court shares this concern. Intensive care coordination is a crucial element of the remedial plan adopted by the court. The absence of this service for most class members constituted one of the major shortcomings in Defendants' Medicaid service network; the deficiency was at the root of the court's finding that a violation of the Medicaid statute had occurred.

Admittedly, individual assessments of particular children may conclude that, in some instances (probably rather infrequent), a Medicaid-eligible SED child may in fact not require intensive care coordination. Neither the court nor, presumably, Plaintiffs have any desire to require Defendants to provide any service that is not, in fact, clinically required. The language in Paragraphs 17 and 18, however, appears to go beyond this. Indeed, Paragraph 17 states that the criteria are intended to

---

1. It is important to emphasize that, as important as the controversy over the form of the final judgment in this case may be, the remedial order already entered in this case has its own independent force. Anchored on the court's finding of liability, it is binding on Defendants.

"assure that this judgment is appropriately focused" on a sub-class of SED children.

To the extent that Defendants need assurance that clinical judgment may be exercised in individual cases, the first proviso established by the court indicating that Defendants "will be free to make clinical decisions based on the needs of individual children" adequately provides this level of clinical discretion. Beyond this, Paragraphs 17 and 18 are likely to generate ambiguity as to the eligibility criteria for services and create mischief during the remedial phase. Thus, Paragraphs 17 and 18 of Defendants' Proposed Judgment will be deleted to eliminate any potential appearance of conflict between the judgment and the court's first proviso.

Some minor textual changes will be made to accommodate the deletion. Paragraph 19, for example, will now read: "The Defendants will provide intensive care coordination to eligible children who choose to have intensive care coordination including a care manager, who facilitates an individualized, child-centered, family-focused care planning team, as follows:" Moreover, on page 8 of Defendants' Proposed Judgment, the sub-heading "1. The Assessment Process" will be deleted, since there will no longer be a second section entitled "Clinical Criteria for Intensive Care Coordination."

Plaintiffs' second major concern regarding Defendants' proposed judgment is the language in proposed Paragraph 49, stating that "Nothing contained in this Judgment shall require the Defendant to take any action that is not a requirement of EPSDT or the reasonable promptness provisions of the Federal Medicaid Act." Plaintiffs are correct that this language also threatens to create an inconsistency that may bedevil the remedial stage.

The court's liability decision was anchored on its finding that the requirements of the Medicaid statute's EPSDT and "reasonable promptness" provisions had not been satisfied for very many class members. The remedy for this violation necessarily requires a number of initiatives by Defendants that are not explicitly spelled out in either of the violated provisions. Plaintiffs point to a good example of one such initiative—data collection—mandated by the remedial order to insure an adequate and effective response to the statutory violations, but not explicitly required by either provision.

The court has the responsibility to insure that Defendants take whatever actions are reasonably necessary to remedy the violations found in its judgment on liability. Obviously, some of these measures may not be spelled out in the EPSDT and "reasonable promptness" provisions of the Medicaid statute. For this reason, the final judgment will delete the quoted sentence in Paragraph 49.

Third, Plaintiffs object to the language in Paragraph 52, which implicitly terminates the court's jurisdiction to enforce or modify the judgment five years after its entry. Plaintiffs do not object to language terminating the "Reporting and Monitoring" provisions by that deadline, but note that nothing in the current remedial order proposes to terminate the jurisdiction of the court at that time.

While the court has no desire to retain jurisdiction any longer than required to insure implementation of the remedy, and, in fact, Defendants are free to move to terminate the court's jurisdiction at any time that a remedy is securely in place, an inevitable termination of the court's supervisory authority after five years would risk compelling the court to abdicate its responsibility to insure that the remedy is properly effectuated. The language of

Paragraph 52 will be modified to delete this jurisdictional deadline.

Plaintiffs have offered additional miscellaneous objections to Defendants' Proposed Judgment, but beyond the changes already noted the Proposed Judgment offered by Defendants acceptably embodies the court's existing remedial order.[2] As the court has already observed, *supra* n. 1, the remedial order retains its own force and will guide the remedy phase. The entry of judgment in the form described, however, will permit the court to close the case -administratively and formally move from the litigation to the remedial phase. The entry of judgment will also establish time frames for appeal by any party and for submission of any application for attorneys' fees.

The court hereby orders that the Judgment, appended to this memorandum as Exhibit A, be entered by the clerk.

It is So Ordered.

---

2. The only other change has been to insert the words "another entity" after the words "time by" on page 7, Paragraph 11, line 4.