**ROSIE D., by her parents JOHN and Debra D., et al., Plaintiffs**

v.

**Deval PATRICK, et al., Defendants.**

**Civil Action No. 01–30199–MAP.**

United States District Court,
D. Massachusetts.

Jan. 14, 2009.

James C. Burling, James W. Prendergast, WilmerHale LLP, Frank J. Laski, Mental Health Legal Advisors Committee, Boston, MA, Cathy E. Costanzo, Northampton, MA, Kathryn L. Rucker, Steven J. Schwartz, Newton, MA, for Plaintiffs.

Daniel J. Hammond, Attorney General's Office, Deirdre Roney, Boston, MA, Timothy M. Jones, Springfield, MA, Juliana deHaan Rice, Arlington, MA, for Defendants.

Robert H. Weber, Newton Highlands, MA, pro se.

## MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS (Dkt. No. 383)

PONSOR, District Judge.

### I. INTRODUCTION

On October 31, 2001, Plaintiffs filed this lawsuit on behalf of a class of Medicaid-eligible children suffering from Serious Emotional Disturbance ("SED"). The complaint alleged violations of the Medicaid Act, most particularly the Act's provisions covering early and periodic screening, diagnostic, and treatment services ("EPSDT"). On January 26, 2006, after successfully defending an appeal to the First Circuit by Defendants, working through years of contentious discovery, and prevailing in a six-week jury trial, Plaintiffs obtained judgment on liability in their favor regarding Counts I and II.

In the following eight months, during bi-weekly meetings the parties attempted, unsuccessfully, to negotiate an agreed remedy. Ultimately, the parties submitted separate proposed versions of a remedial plan, and on July 16, 2007, the court issued its final judgment, adopting the many common elements of the parties' submissions and resolving the relatively few disputed areas. *Rosie D. v. Patrick*, 497 F.Supp.2d 76 (D.Mass.2007).

The judgment, which has not been appealed, constituted a hard-fought but spectacular victory for Plaintiffs' counsel and, more importantly, for their vulnerable clients. The remedial order incorporated in the judgment mandates the creation by Defendants of a comprehensive package of in-home behavioral support services for low-income SED children. This system of services will permit many more of these children to stay in their homes, or in home-like settings, rather than languishing in large and often inappropriate institutions, sometimes untreated and virtually forgotten for months or even years. The Defendants' commitments under the court's order will enrich programming for this population by hundreds of millions of dollars annually and offer the opportunity for a far happier life to thousands of disabled children.

Following entry of judgment, the parties once more spent several months in negotiation, this time to seek a resolution of Plaintiffs' fee claim, but again without success. Now before the court is Plaintiffs' motion for an award of $7,185,958.32 in fees and costs pursuant to 42 U.S.C. § 1988. Defendants do not dispute Plaintiffs' entitlement to an award, but contend that the total amount should be no more than $2,708,487.01.

The analysis below will begin with a more detailed overview of this unusually complex and protracted litigation. It will then address the areas of disagreement between the parties regarding fees and costs. The court will conclude that, with modest reductions, Plaintiffs' counsel's requested fees and costs are more than reasonable. Indeed, counsel's request, substantially reduced before submission, reflects laudable restraint and scrupulousness. In the case of the attorneys working in association with the private law firm, WilmerHale, their reduced request constitutes both a testament to their dedication to the disabled children and an expression of the highest values of the bar. The firm's willingness to charge at rates far lower, and for hours far less, than would be accepted as a matter of course from other clients deserves, and has, the respect of this court.

Before going into the details, it may be helpful to emphasize three factors that have influenced the court's ruling with particular force.

First, in more than twenty-five years trying civil cases as a Magistrate Judge and District Judge, this is one of the two or three most legally and factually complicated, and vigorously litigated, lawsuits I have presided over. Second, the level of professionalism exhibited by Plaintiffs' counsel at every stage has been unsurpassed by any the court has seen.[1] Third, as noted, the result achieved by Plaintiffs' counsel has been profound and, for their clients, one hopes, transformational.

## II. BACKGROUND

Even before the filing of the first pleading, this case demanded an unusually high level of fact investigation, including months of consultation with children's mental health providers and professionals, interviews with families and family organizations, and a lengthy review of medical records. The legal research demands were also heavy. A plethora of generally relevant statutory and decisional law existed, but little directly applicable authority

---

1. The fact that the quality of effort exhibited by Plaintiffs was matched by Defendants' counsel does nothing to dilute the significance of this finding. Indeed, it has been a privilege over these many years to work with attorneys on both sides who have exhibited the highest levels of skill and dedication.

existed for the groundbreaking litigation contemplated.

Following this preliminary factual and legal work-up, a demand letter was sent to Defendants in January 2001. This communication triggered six months of unsuccessful negotiations, leading to the formal commencement of litigation on October 31, 2001.

On March 29, 2002, Plaintiffs obtained a class certification order, as well as a ruling denying Defendants' Motion to Dismiss. An appeal of the denial of Defendants' claim of Eleventh Amendment immunity proceeded before the First Circuit and resulted in an affirmance of the district court's ruling in all respects. 310 F.3d 230 (1st Cir.2002).

On remand, fact discovery was, to put it mildly, lengthy and contentious. Frequent judicial oversight was required, and rulings by the court largely upheld the positions of Plaintiffs. *Rosie D. v. Romney,* 256 F.Supp.2d 115 (D.Mass.2003). The discovery process resulted in the production of over 200,000 pages of documents, including 30,000 pages of medical records, and the deposition of thirty fact witnesses and twenty experts. At every stage, specialized legal, medical, and data consultants were, of necessity, retained to analyze the information provided. Fifty typical children suffering from SED were selected from the class, and five highly qualified experts evaluated this sample and presented their findings with regard to whether the children's level of care complied with Medicaid requirements.

Following rulings on various motions *in limine,* trial commenced on April 25, 2005 and unfolded with the presentation of twenty-five witnesses for Plaintiffs and fifteen for Defendants. Plaintiffs offered five hundred exhibits and Defendants one hundred; the ultimate trial transcript exceeded 20,000 pages. Evidence closed on June 9, 2005, and final arguments on August 9, 2005. The court issued judgment for Plaintiffs with regard to liability on January 26, 2006, *Rosie D. v. Romney,* 410 F.Supp.2d 18, 29 (D.Mass.2006). Following extensive, but unsuccessful attempts to negotiate an agreed remedial order, final judgment entered on July 16, 2007. *Rosie D. v. Patrick,* 497 F.Supp.2d 76 (D.Mass. 2007).

The outline above can only give a flavor of the degree of effort expended by both parties in this now more than seven-year litigation. Many attorneys, many experts, hundreds of thousands of documents, dozens of witnesses, scores of depositions, and tens of thousands of hours were reasonably necessary to do justice to the complex facts and intricate legal issues posed by this case.

## III. DISCUSSION

### A. *Legal Principles*

The framework for determining an appropriate award of attorney's fees pursuant to 42 U.S.C. § 1988 is well established and superficially straightforward. The first step, a determination as to whether Plaintiffs "prevailed," requires no discussion here; Defendants concede that Plaintiffs won. Indeed, the court must add that, given the fierce resistance by Defendants, the huge stakes for the Plaintiff class, and the far from certain outcome, the victory was resounding.

The mathematics of the fee calculation, once the prevailing party is recognized, are deceptively simple. The court is to determine the fee based upon "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Once this so-called "lodestar" figure is es-

tablished, the court has the discretion in "cases of exceptional success" to make an enhanced award. *Id.* at 435, 103 S.Ct. 1933. Although the basics of the math have a disarmingly objective appearance, the calculations leave a good deal of room for disagreement and, equally importantly, for the exercise of discretion on the part of the court. A very recent First Circuit opinion has re-emphasized the "extremely broad" discretion of the trial court in setting fee awards. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 75 (1st Cir.2009).

■ As a final step in the process of calculating an appropriate award, the court has the discretion, within certain parameters, to order reimbursement of reasonable expenses over and above attorney's fees to the prevailing Plaintiffs.

In connection with the calculation of the appropriate hourly rate, the First Circuit requires that affidavits be submitted attesting to the reasonableness of the rates by knowledgeable attorneys unconnected to the underlying litigation. *Bordanaro v. McLeod,* 871 F.2d 1151, 1168 (1st Cir. 1989). In *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court made it clear that fee awards under 42 U.S.C. § 1988 should be based upon "the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." Indeed, as Plaintiffs' counsel points out, the legislative history of § 1988 makes it clear that fee awards should "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases...." S.Rep. No. 94–1011, at 6 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. Plaintiffs have fully complied with their obligation by filing with the court four affidavits from attorneys with broad and pertinent experi-

ence attesting to the reasonableness of the hourly rates Plaintiffs claim.

In connection with the calculation of the reasonable number of hours expended, the First Circuit has required that prevailing plaintiffs maintain and submit detailed, contemporaneously-recorded time records describing with particularity the date, activity and time spent on each litigation task. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 952 (1st Cir.1984). Once again, Plaintiff have fully complied with this requirement by submitting detailed, computerized time records. These were later reduced to a searchable form and turned over to Defendants for their review.

Despite the apparent clarity of the framework to be used in awarding fees and costs, and the compliance by Plaintiffs with all the requirements articulated by First Circuit and Supreme Court authority, a wide disagreement exists between Plaintiffs and Defendants with regard to the fee award. Plaintiffs, as noted, seek $7,185,958.32 for fees and costs, while Defendants can only concede that they "do not dispute" an award of figure of $2,708,487.01. (*See,* Defendants' Memorandum in Opposition, Dkt. 396, at 1.)

Although the spectrum of disagreement between Plaintiffs and Defendants has many components and ranges from the global to the picayune, the issues whose resolution will permit a ruling on Plaintiff's motion come down to three: 1) proper calculation of the hourly rates; 2) Defendants' claim for an overall, general reduction in fees of thirty percent; and 3) specific items Defendants object to with regard to the hourly claims of particular attorneys. The final portion of the court's responsibility, which will be addressed at the conclusion of this discussion, will be calculation of the appropriate amount of costs.

For the reasons set forth below, the court will approve the hourly rates claimed by all counsel in this case, will decline to impose any 30% overall reduction in the fee claim, and will deduct from Plaintiffs' claim all of the items specifically identified by Defendants as noncompensable. As will be seen, the items in the third category are so minimal that they do not merit extended discussion. In other words, while they have general objections, Defendants have been unable to identify specifically any substantial amount of over-reaching on the part of Plaintiffs' counsel. To the extent particular problems have been identified, the court has made the reduction claimed by Defendants.

Clarification of these issues will result in calculations producing an award of $6,885,108.75 for Plaintiffs. Finally, the court will approve Plaintiffs' request for costs, resulting in an award in this area of $221,305.82.

### B.  *Hourly Rates*

The calculation of an appropriate hourly rate is simplified in this instance by the fact that the rates of several of Plaintiffs' counsel, those associated with the law firm WilmerHale, have been previously established by their firm. Thus, for Attorney James Burling his established rate is $685/hour, for James Prendergast, $625/hour, for John Rhee, $470/hour, for Christopher Zimmerman, $420/hour, for Sara Shanahan [2] at $395 per hour, and for paralegals Janet Rountree and Anita Galino, $190/hour and $225/hour, respectively. At least one court of appeals has found that the best evidence of a reasonable hourly rate is the rate "customarily charged by coun-

sel. . . ." *Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir.1986).

Although the case law is not entirely consistent, the strongest and most persuasive authority is that an attorney representing a plaintiff in a civil rights action should get whatever his or her normal hourly rate is, assuming that it lies under the broad umbrella of what is "reasonable." Certainly, an attorney should not expect to receive less for doing important work on behalf of vulnerable plaintiffs in a piece of hotly contested, complex class litigation. There is no "good guy" or "white hat" fee discount. Thus, as a threshold matter, the court might well simply start, with regard to these seven individuals at least, by approving their well-established, customary hourly rates.

Significantly, and despite the fact that they might well claim these billing rates, all counsel associated with WilmerHale have reduced their rate claim in this case by more than a third, to roughly 62% of their normal hourly fee. This voluntary reduction greatly strengthens Plaintiffs' case and is an eloquent expression of the good faith of the WilmerHale contingent. The adjustment in hourly rates, coupled (as will be seen) with the voluntary surrender of hundreds of other hours that might well have been claimed by dozens of other WilmerHale lawyers who worked on the case but whose hours have been entirely omitted from the fee claim, has reduced the portion of the claim for attorneys' fees by the professionals associated with WilmerHale by nearly two million dollars.

Based on the foregoing, the court will award the rates actually requested by the WilmerHale lawyers, specifically $425/hour for James Burling, $400/hour for James

---

**2.** The hours for Attorney Shanahan are set forth in Plaintiffs' Summary of Fees, Dkt. No. 383–3 at 4, but not referenced in their summarized claim in their memorandum, Dkt. No. 384 at 23. This omission has resulted in some confusion, which will be addressed below.

Prendergast, $290/hour for John Rhee, $265/hour for Christopher Zimmerman, $145/hour for Anita Galino, and $125/hour for Janet Rountree. The court will award an hourly rate for Sara Shanahan, whose rate is not specified in Plaintiffs' memo, at $245/hour.

■ The hourly rates established for the WilmerHale group provide a benchmark for the hourly rates applicable to the public interest attorneys who also worked on the case and who are associated with the Center for Public Representation ("CPR") and for the Mental Health Legal Advisors Committee ("MHLAC"). Lead attorney Steven Schwartz of CPR and Frank Laski of MHLAC have comparable years before the Bar and more pertinent experience than Attorney James Burling and therefore an award of fees at the same hourly rate applied to him of $425/hour is appropriate. Similarly Cathy Costanzo possesses experience roughly comparable to James Prendergast and is entitled to her requested hourly fee of $375/hour. The court will award $300/hour to Kathryn Rucker and $125/hour to Marcia Boundy, a paralegal in roughly the same role as Janet Rountree.

These rates are close to or below rates awarded to experienced attorneys in other civil rights cases in this District. *See Stokes v. Saga Int'l Holidays, Ltd.,* 376 F.Supp.2d 86 (D.Mass.2005)($445/hour for lead attorney, $395/hour for second attorney). Moreover, as Plaintiffs' counsel point out, the district court for the District of Columbia has previously awarded attorneys associated with this case hourly rates at the level requested and awarded by the court in this case.

It is significant, in addition, that the hourly rates requested in this case are strongly supported by affidavits submitted by knowledgeable, independent attorneys with broad experience in this area of the law. Ira A. Burnim has been for eighteen years the legal director of the Judge Bazelon Center for Mental Health Law in Washington, D.C. and is familiar both with similar class action litigation and with the complexity of the case now before the court. Stephen F. Hanlon, a partner in the law firm of Holland & Knight, has thirty years of experience related to litigation of this sort. He aptly describes counsel's willingness to compromise their fee rates as "'outfairing' their opponent." (Affidavit of Stephen F. Hanlon, Dkt. No. 383–14 at ¶ 21, 8–9.) The Burnim and Hanlon affidavits are supported by affidavits from two local attorneys, well informed of the local hourly rates, Daniel Manning, litigation director for Greater Boston Legal Services, Inc., and Stuart Rossman, senior attorney and director of litigation at the National Consumer Law Center in Boston. It is significant that these well informed submissions have not been contested by any affidavits from Defendants, and they strongly support the hourly rates requested here.

Defendants' citation of *Rolland v. Cellucci,* 151 F.Supp.2d 145 (D.Mass.2001), in support of an upper-end hourly rate of $275/hour is unpersuasive, for several reasons. The *Rolland* decision is seven years old, the case was far less complex, the duration of the litigation was a small fraction of the duration of this case, and the hourly rate was negotiated and established by agreement of the parties.[3]

**3.** Plaintiffs contend in a footnote to their reply memorandum, that a "core element of that [*Rolland*] agreement was that such rates could not be used by any party as a precedent to establish ... a reasonable rate in any other

proceeding or case." (Dkt. No. 399 at 7 n.10.) The court has not considered Plaintiffs' contention that Defendants agreed not to cite the *Rolland* fee as a precedent, but to the extent that this assertion is true, it further

In sum, Defendants' almost complete reliance on *Rolland* for a further drastic reduction in the already-reduced applicable hourly rates collapses in the face of the overwhelming evidence contained in comparable litigation, in the affidavits supporting the fee claim, and in the unprecedented good faith demonstrated by counsel in their current hourly rate proposals.

## C. *Percentage Reduction of Claimed Hours*

Apart from their objections to the hourly rates, Defendants contend that the requested hours should be reduced across the board by thirty percent to account for excessive claimed time and duplication of effort. (*See* Dkt. No. 396 at 7.) The arguments supporting such a substantial overall reduction are entirely unpersuasive and particularly inappropriate in light of the substantial number of hours that Plaintiffs have already voluntarily deducted from their petition.

■ One argument of Defendants for the thirty percent reduction—overstaffing the case—has a particularly hollow ring, for two reasons. First, Defendants committed a comparable number of staff to this difficult litigation. Second, in addition to voluntarily reducing hourly rates, Plaintiffs have voluntarily eliminated the hours contributed by eighty lawyers from WilmerHale and three additional public interest lawyers associated with the Center for Public Representation. These voluntary reductions have eliminated more than 5,200 hours from the total now claimed. (*See* Dkt. No. 383–5, Schwartz Aff. ¶ 15 and Dkt. No. 383–6, Burling Aff. ¶¶ 39–43.) With these subtractions, and especially in light of their own committed resources, Defendants can have no legitimate complaint of overstaffing as reflected in Plaintiffs' ultimate fee submission.

Similarly unsupported and unconvincing are Defendants' arguments that Plaintiffs' counsel engaged in excessive conferences and consultations, Excessive use of attorneys for paralegal functions, and excessive time doing research, drafting and editing. As already noted, the case was enormously complex, both factually and legally. The number of attorneys comfortably matched the complexity of the litigation. Moreover, Plaintiffs made resourceful efforts to use their time efficiently by separating defined segments of legal research and factual development into working groups headed by different attorneys. These efficiencies helped to lower the necessary hours.

■ It is especially significant that Defendants, as was their right, litigated this case to the hilt. An unsuccessful appeal by Defendants to the First Circuit required considerable attention by Plaintiffs, discovery was (as noted) very contentious and resulted in numerous motions, almost all of which were resolved in Plaintiffs' favor. The trial was protracted and preparation of the numerous lay and expert witnesses reasonably required considerable time. Conferencing, to a significant but not excessive extent, was simply a necessary element of managing the litigation competently. In the end, Defendants' demand for a further thirty percent reduction—beyond the hours and hourly rates already surrendered by Plaintiffs—appears to have been concocted out of thin air and has no objective relationship to any fairly identified deficiencies in the fee petition.

Finally, it is worth noting that the court has the power to award an additional fee based upon extraordinary success. A

---

supports the court's conclusion that *Rolland* does not establish a persuasive precedent for

the hourly rate in this case.

strong case could be made that this was one of the infrequent instances where the degree of success was so outstanding, and the risk counsel took on in committing such enormous resources so profound, that an upward adjustment of the fee award might well be considered. To the extent that Defendants were able to produce evidence justifying a modest additional fee reduction of, say, five percent—which they have not—the court would be inclined to award an enhanced fee of the same percentage to recognize the marked success of this litigation on behalf of the Commonwealth's neediest citizens. To repeat, success in this case was by no means guaranteed, and counsel showed rare courage in offering a huge commitment of hours and expenses (many of which, even now, will not be reimbursed), with no certainty of success.

To conclude, based on the foregoing, no across-the-board reduction of the hours claimed by Plaintiffs' counsel is justified in this case.

### D. *Specific Requested Subtractions from Plaintiff's Request*

Defendants have objected to a relatively limited, specific number of hours which they say counsel are not entitled to claim. In order to eliminate any unnecessary disputes, and to insure complete fairness to Defendants, the court will subtract from Plaintiffs' fee request all the hours specifically requested by Defendants.[4] It is significant, particularly in light of the thirty percent requested reduction, that these hours specifically identified are, in the overall fee petition, extremely few.

### E. *Fee Award*

In light of the findings made by the court above, the following fees are hereby awarded.

1. *Attorney Schwartz*

   Reasonable non-travel hours: 3520.3

   Reasonable billing rate: $425/hour

   Total non-travel fee award:$1,496,-127.50

   Travel hours: 261.4

   50% hourly rate for travel: $212.50/hour

   Total travel fee award:$55,547.50

   Total fee award for Atty. Schwartz: $1,551,675

2. *Attorney Costanzo*

   Reasonable non-travel hours: 2485.5

   Reasonable billing rate: $375/hour

   Total non-travel fee award:$932,062.5

   Travel hours: 286.3

   50% hourly rate for travel: $187.50/hour

   Total travel fee award: $53,681.25

   Total fee award for Atty. Costanzo: $985,743.75

3. *Attorney Laski*

   Reasonable non-travel hours: 756.6

   Reasonable billing rate: $425/hour

   Total non-travel fee award: $321,555

   Travel hours: 42.5

   50% hourly rate for travel: $212.50/hour

   Total travel fee award: $9,031.25

   Total fee award for Atty. Laski: $330,586.25

4. *Attorney Rucker.*

   Reasonable non-travel hours: 1178.5

   Reasonable billing rate: $300/hour

   Total non-travel fee award: $353,500

   Travel hours: 145.7

   50% hourly rate for travel: $150/hour

---

**4.** In determining the hours conceded by Defendant, the court has relied on the numbers listed in Part D of their memorandum. (Dkt. No. 396 at 15–19.)

Total travel fee award: $21,855

Total fee award for Atty. Rucker: $375,405

5. *Paralegal Boundy*

Reasonable non-travel hours: 3,725.6

Reasonable billing rate: $125/hour

Total non-travel fee award: $465,700

Travel hours: 154.9

50% hourly rate for travel: $62.50/hour

Total travel fee award: $9,681.25

Total fee award for Paralegal Boundy: $475,381.25

6. *Attorney Burling.*

Reasonable hours: 1958.6

Reasonable billing rate: $425/hour

Total fee award for Atty. Burling:[5] $832,405

7. *Paralegal Galino.*

Reasonable hours: 146

Reasonable billing rate: $145/hour

Total fee award for Paralegal Galino: $21,170

8. *Attorney Prendergast.*

Reasonable hours: 1,212.6

Reasonable billing rate: $400/hour

Total fee award for Atty. Prendergast: $485,040

9. *Attorney Rhee.*

Reasonable hours: 3,135.5

Reasonable billing rate: $290/hour

Total fee award for Attorney Rhee: $909,295

10. *Paralegal Rountree.*

Reasonable hours: 2,588

Reasonable billing rate: $125/hour

Total fee award for Paralegal Rountree: $323,500

11. *Attorney Shanahan.*[6]

Reasonable hours: 383.8

Reasonable billing rate: $245/hour

Total fee award for Attorney Shanahan: $94,031

12. *Attorney Zimmerman.*

Reasonable hours: 1890.1

Reasonable billing rate: $265/hour

Total fee award for Atty. Zimmerman: $500,876.50

Total fees for all counsel: $6,885,108.75

F. *Reasonable Costs*

■ Plaintiff have requested costs in the amount of $221,305.82. The court will award this full amount. Plaintiffs, as their submissions demonstrate, actually incurred costs in excess of $645,000 but made substantial reductions in their cost claim to insure compliance with applicable law and avoid any risk of overreaching. Defendants' argument that in-house copying is not reimbursable, (in contrast to copying by an outside professional copying firm) is unsupportable. The reduction of copying costs in a case of this magnitude is particularly unjustified. In addition, the claims for travel and meals are entirely reasonable.

5. It is not the practice of WilmerHale to reduce its attorneys' hourly rates for travel. Since travel was a relatively small portion of the WilmerHale claim and since WilmerHale attorneys have already reduced both their hourly rates and total hours substantially, the court will make no separate award for travel but will calculate the fee award simply on hours claimed and not specifically objected to.

6. As noted above, Attorney Shanahan, though mentioned in several of Plaintiffs' exhibits, is not listed in Plaintiffs' memo where the hourly rates appear. (Dkt. No. 384 at 23.) However, since it appears this is an oversight, the court has awarded fees for the hours conceded by Defendants (without any across-the-board reduction), at an hourly rate roughly 62% of her usual billing fee.

## IV. CONCLUSION

Based on the forgoing, the court hereby awards attorneys' fees in the total amount of $6,885,108.75 and costs in the amount of $221,305.82.

In view of the lengthy wait Plaintiffs have endured in obtaining this award, the court orders Defendants to make full payment of fees and costs, absent an appeal, within forty-five days of this order. In the event of an appeal, the court orders that Defendants make a payment of $2,708,487.01 as fees and costs within forty-five days of this order. This is the amount that Defendants have stated that they do not dispute. (*See* Dkt. 396 at 1.)

It is So Ordered.