ROSIE D., et al., Plaintiffs

v.

Deval L. PATRICK, et al., Defendants.

Civil Action No. 01–30199–MAP.

United States District Court,
D. Massachusetts.

Feb. 27, 2009.

James C. Burling, John Sup Rhee, Wilmer Hale LLP, Frank J. Laski, Mental Health Legal Advisors Committee, Boston, MA, Cathy E. Costanzo, Steven J. Schwartz, Center for Public Representation, Northampton, MA, Kathlyn L. Rucker, Center for Public Representation, Newton, MA, for Plaintiffs.

Daniel J. Hammond, Attorney General's Office, John R. Hitt Cosgrove, Eisenberg & Kiley, PC, Deirdre Roney, State Ethics Commission, Kenneth W. Salinger, Massachusetts Attorney General's Office, Boston, MA, Bart Q. Hollander, Attorney General's Office, Springfield, MA, for Defendants.

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO MODIFY JUDGMENT

PONSOR, District Judge.

On January 26, 2006, this court issued its Memorandum of Decision, finding that Defendants violated the Medicaid Act by failing to provide medically necessary screening, diagnostic, and treatment services to eligible children suffering from serious emotional disturbances. *See Rosie D. v. Romney*, 410 F.Supp.2d 18 (D.Mass. 2006). On February 22, 2007, the court issued a further order, adopting Defendants' proposed remedial plan, subject to certain provisos. *See Rosie D. v. Romney*, 474 F.Supp.2d 238 (D.Mass.2007). In accepting, in large part, Defendants' remedial proposal the court explicitly put the burden on the shoulders of Defendants to honor their own commitment. The court observed that

> ... there is some force in being able to say to Defendants: You have endorsed this plan, now implement it; prove to the court that it will work.
>
> Undue delay or ineffective programming will not be excused by complaints that Defendants are being forced to implement a plan they never bought into.

*Id.* at 239.

Following issuance of the remedial plan, the court entered judgment in favor of Plaintiffs on July 16, 2007. 497 F.Supp.2d 76 (D.Mass.2007). In doing this, the court again showed deference to Defendants; the form of judgment largely followed Defendants' proposal. The judgment was not appealed.

Since entry of the remedial order and appointment of a monitor, the parties have been working towards the effectuation of the remedial plan with the creation of new treatment modalities for class members. With the assistance of the court monitor, and the good faith efforts of both Plaintiffs and Defendants, considerable progress has been made.

On January 16, 2009, Defendants filed a motion to amend the court's judgment (Dkt. No. 431), seeking leave of the court to postpone implementation of certain services required by the remedial order. Specifically, Defendants sought to postpone for one year the implementation date for four services: In–Home Behavioral Services, In–Home Therapy Services, Therapeutic Mentoring Services, and Crisis Stabilization Services. The justification for the requested postponement was the

fiscal crisis facing the Commonwealth. Defendants estimated that the one-year postponement of these services would save the Commonwealth $48,000,000. Under Defendants' proposal, all remaining services, including most importantly Intensive Care Coordination Services, would fall into line on the required date of July 1, 2009.

On February 2, 2009, Plaintiffs filed a motion for discovery and briefing regarding Defendants' request for modification, and the court heard argument on both motions on February 12, 2009. At the hearing, Plaintiffs' counsel argued vigorously that Defendants had failed to demonstrate any adequate fiscal justification for a postponement of implementation of the four services, that the Plaintiff class would suffer disproportionately by the delay in comparison to other needy populations in the Commonwealth, and that separating care coordination services from substantive treatment services by a year would be indefensible from an administrative and clinical viewpoint. Plaintiffs argued that, at a minimum, they should be permitted to take discovery to probe the fiscal background and process of decision-making that led to Defendants' proposal.

At the conclusion of the February 12 hearing, the court made two preliminary decisions. First, the court denied Plaintiffs' request for discovery and an evidentiary hearing regarding Defendants' decision-making process, on the ground that it would risk an improper intrusion by the federal court into the sphere of discretion properly exercised by the Commonwealth. Second, the court indicated that it would not countenance a one-year delay of the four services for class members. The children awaiting these services are among the most fragile and vulnerable citizens of the Commonwealth; their needs have been grossly neglected for decades. Given this history, the irony of creating care coordi-

nation services at one point, with substantive therapeutic treatment to follow only a year later, was too cruel for long consideration.

Having made these two preliminary decisions, the court directed the parties to attempt to negotiate a resolution of their differences, considering a possible postponement of some of the four substantive services in the three-month to six-month range. Pursuant to the court's request, and consistent with the good faith that both sides have shown throughout the implementation process, extensive efforts were made to negotiate a resolution to the dispute. Unfortunately, while the differences were narrowed, complete resolution proved to be out of the parties' reach.

Following negotiations, however, Defendants filed a Revised Proposal to Extend Certain Deadlines (Dkt. No. 439). The revised proposal contemplated implementation of three services (Intensive Care Coordination, Mobile Crisis Intervention, and Family Partners) no later than July 1, 2009, with In–Home Behavioral Services and Therapeutic Mentoring Services to be delayed by three months, Crisis Stabilization by five months, and In–Home Therapy by six months.

Counsel appeared for argument on this revised proposal on February 25, 2009. Based on the parties' presentations, it became clear that a crucial sticking point was the six-month delay in In–Home Therapy Services. The In–Home Therapy component of the treatment regimen provides support to families and children aimed at permitting children with serious emotional disturbances to stay in their homes. Clinically, well more than half of the class population needs these services, and they are therapeutically one of the key components of the remedial plan. Counsel for Defendants estimated that the revised pro-

posal would garner savings to Defendants of approximately $18,000,000.

Following argument, the court adopted Defendants revised proposal, with one exception. In–Home Therapy Services will commence on November 1, 2009, following a four-month, not a six-month, postponement. Assuming that a two-month modification of the proposed postponement will reduce the savings contemplated by Defendants by approximately $4,000,000, this still means that the contribution by this class of disabled children to assist the Commonwealth's fiscal crisis will be approximately $14,000,000. This is enough.

The court is sensitive to the difficult decisions that these economic times force onto the Commonwealth and is willing to respond with some degree of flexibility. On the other hand, these children have already waited far too long for the services they are legally entitled to under the Medicaid statute. The modification adopted by the court represents the fairest and most sensible balance achievable in this situation.

Based on the foregoing, the court hereby ALLOWS Defendants' Motion to Modify Judgment (Dkt. No. 431), to the extent that In–Home Behavioral Services and Therapeutic Mentoring Services may commence by October 1, 2009, In–Home Therapy Services may commence by November 1, 2009, and Crisis Stabilization Services may commence by December 1, 2009. In all other respects, the original Remedial Order of February 22, 2007 will remain as issued.

It is So Ordered.