Ollie **CARRUTHERS**, et al., Plaintiffs,

v.

Scott **ISRAEL**, et al., Defendants.

Case No. 76–06086–CV–**MIDDLEBROOKS**

United States District Court, S.D. Florida.

Signed 08/14/2017

Filed 08/15/2017

Nancy Gbana Abudu, American Civil Liberties Union of Florida, Miami, FL, Eric Balaban, National Prison Project of the ACLUF, Washington, DC, Christopher C. Cloney, Cloney & Cloney, P.A., Cocoa Beach, FL, Randall C. Marshall, American Civil Liberties Union of Alabama Foundation, Inc., Montgomery, AL, for Plaintiffs.

Scott Andron, Hollie Noelle Hawn, Michael James Kerr, Stephanie W. Noe, Broward County Attorney's Office, Lynn Futch Cooney, Terrence O'Byrne Lynch, Broward Sheriff's Office, Bruce Wallace Jolly, Purdy Jolly Giuffreda & Barranco PA, Charles Thomas Whitelock, Whitelock & Associates, Fort Lauderdale, FL, Robert David Arthur, II, Martin County Attorney's Office, Stuart, FL, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND NON–TAXABLE EXPENSES

DONALD M. MIDDLEBROOKS, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court on Plaintiffs' Motion for Attorneys' Fees and

Non–Taxable Expenses for the work performed by the ACLU's National Prison Project ("NPP") and by the ACLU of Florida (collectively, "ACLU") ("Motion"), filed January 18, 2017.[1] (DE 992). On May 26, 2017, Defendant Broward County ("County") filed a response (DE 1003), and on June 1, 2017, Defendant Sheriff Scott Israel ("Sheriff") filed a response (DE 1007).[2] Plaintiffs replied on August 1, 2017. (DE 1010). For reasons stated below, Plaintiffs' Motion is granted.

## BACKGROUND

The initial complaint in this action was filed in 1976 and raised a broad range of constitutional issues relating to prison operations and conditions, including issues of overcrowding. A class was certified in 1978. In 1994, the Court entered the Stipulation for the Entry of Consent Decree (the "Consent Decree"), which outlines the Parties' responsibilities for addressing unconstitutional conditions in County facilities.[3] (DE 913–1). The Consent Decree included relief for various constitutional issues, including overcrowding, and provided for fees and costs to Plaintiffs' counsel for compliance monitoring. (Id. at 19).

In May 2001, the NPP appeared as co-counsel for Plaintiffs, upon the request of the law firm of Cloney & Malloy, which had contacted the NPP for litigation assistance in light of a pending motion to terminate the Consent Decree, brought under the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626. (DE 992 at 2). After the NPP joined as co-counsel,

they participated in moving the Court for the appointment of neutral experts to assess the conditions of the County facilities in order to assist the Court in resolving the then-pending motion to terminate. (DE 992 at 3). The experts issued their findings in 2004, and the Parties thereafter engaged in a series of legal skirmishes over discovery and preparation for the hearing on the termination motions. (Id.). After extensive negotiations involving the NPP, the Parties entered into two stipulations for settlement in 2004 (the "2004 Stipulations"). (913–8; 913–9). Pursuant to the 2004 Stipulations, the NPP continued to monitor the County facilities for compliance in certain constitutionally deficient areas, including monitoring capacity to address overcrowding. (Id.). The 2004 Stipulations also provided for Plaintiffs' entitlement to their attorneys' fees and costs. (Id.).

After the case was transferred to me in 2014, I issued an order to show cause why the Consent Decree should not be dissolved or amended. (DE 894). In response, Plaintiffs and the Sheriff agreed to a new settlement agreement, which sets forth a process for evaluating and remedying any remaining constitutional issues in the facilities' operations. (DE 929–1). In addition, after multiple hearings, I entered an Order dissolving the Consent Decree as to the County, upon concluding that the basic purposes of the Consent Decree with regard to overcrowding had been achieved. (DE 957).

As a result of the dissolution of the Consent Decree as to the County, on Oc-

---

1. Plaintiffs filed a placeholder Motion for Attorneys' Fees and Costs ("Placeholder Motion") on October 31, 2016. (DE 965). The Parties subsequently agreed to an extension of time for Plaintiffs to file their Motion (DE 984), which the Court granted (DE 985).

2. The Sheriff adopts the County's response, except as to any argument that the County is

only required to pay fees related to overcrowding issues at the County facilities. The Sheriff argues, and the Court agrees, that only Plaintiffs' entitlement to fees, and not the division of fee payments between the County and the Sheriff, is properly before this Court.

3. Prior to the 1994 Consent Decree, the Count had entered a consent decree in 1982.

tober 31, 2016, Plaintiffs filed the Placeholder Motion to notify the Parties that Plaintiffs intended to seek an award of attorneys' fees and costs from the County. (DE 965). On December 2, 2016, Plaintiffs, the Sheriff, and the County filed a joint motion, requesting until January 18, 2017 for Plaintiffs to file a motion for attorneys' fees and costs as to both Defendants (DE 984), which the Court granted (DE 985).

## STANDARD

 A reasonable attorneys' fee award "is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The fee applicant bears the burden of documenting "the appropriate hours and hourly rates." *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988). After calculating the lodestar fee, the court determines whether any portion of this fee should be adjusted upwards or downwards for results obtained. *Id.* at 1302.

 "Although [the *Johnson* ] balancing test has since been displaced by the lodestar formula, [the Eleventh Circuit] ha[s] expressed [its] approval of district courts considering the *Johnson* factors in establishing a reasonable hourly rate." *Loranger v. Stierheim,* 10 F.3d 776, 781 n.6 (11th Cir. 1994). The *Johnson* factors are: the time and labor required to prosecute the suit; the novelty and difficulty of

the legal questions; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; the time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718–19 (5th Cir. 1974),[4] *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989).

## DISCUSSION

### A. Attorneys' Fees

As an initial matter, the Parties do not dispute that Plaintiffs are entitled to attorneys' fees and costs pursuant to the Consent Decree and the 2004 Stipulations.[5]

Plaintiffs request attorneys' fees and costs for services performed by the ACLU from May 2001 through October 17, 2016.[6] Specifically, Plaintiffs seek $757,840.00 in fees, with interest from the date of judgment, based on 3,528 hours at an hourly rate of $219.00 for attorneys and $160.00 for law clerks. Defendants raise three objections to the reasonableness of Plaintiffs' fee claim: (1) Plaintiffs are not entitled to fees for work related to the overcrowding issue because such work was not directly

---

4. The Eleventh Circuit has recognized the case law of the former Fifth Circuit prior to October 1, 1981 as its governing body of precedent. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981).

5. As recently as the fairness hearing in December 2015, Defendants agreed on the record that the 2004 Stipulations entitle Plaintiffs to reasonable fees through October 17, 2016, with argument reserved only "as to the

lodestar or the amount of the fees." (DE 992–4).

6. Plaintiffs request leave to file a supplemental motion for fees incurred litigating this Motion. The Court encourages the Parties to resolve this issue without judicial intervention, pursuant to Local Rule 7.3, but if the Parties are unable to do so, Plaintiffs may file a supplemental motion.

and reasonably incurred in proving and enforcing an actual violation of Plaintiffs' rights, (2) the PLRA dictates that the hourly rates charged by attorneys should be capped at $193.50, and (3) the Court should reduce the rate for law clerks to $100.00 so that it is more proportionate to the PLRA-rate for attorneys.[7]

### i. Compensable Hours

Defendants argue that Plaintiffs are not entitled to fees for work performed by the ACLU on overcrowding for two reasons. First, Defendants argue that Plaintiffs are not the "prevailing party" under 42 U.S.C. § 1988 as to the overcrowding claim because the Court ultimately terminated the Consent Decree upon concluding that its basic purpose with regard to overcrowding had been achieved.[8] Second, and relatedly, Defendants argue that the ACLU's work on overcrowding was not reasonably incurred in proving an actual violation of Plaintiffs' rights or proportionally related to court-ordered relief, as required by the PLRA, because the County had already

addressed the overcrowding issue through the construction of new facilities, which were predominately completed before the ACLU appeared as co-counsel in this case.

██ As a general rule, "[e]fforts to monitor compliance with a consent judgment 'cannot be severed from the matters upon which the plaintiff prevailed' by obtaining the consent judgment. . . ." *Turner v. Orr,* 785 F.2d 1498, 1503–04 (11th Cir. 1986). "[T]he expenses of the [plaintiff], including those of its counsel, incurred in its post-judgment efforts at monitoring and enforcement are properly payable by the defendants as those of a 'prevailing party', whether or not it prevails in each individual post-judgment effort because these 'measures necessary to enforce the remedy ordered by the [district] court cannot be severed from the matters upon which the plaintiff prevailed' in obtaining the judgment." *Id.*

The PLRA does not alter this general rule.[9] "Once a violation has been proven, later work is compensable if it is 'directly

---

7. The Court notes that Defendants did not follow the procedures set forth in Local Rule 7.3 in lodging their objections, and that Defendants' non-compliance alone would be a sufficient reason to deny its objections. *See, e.g., Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC,* No. 12-22539-CIV, 2015 WL 11201164, at *2 (S.D. Fla. Jan. 14, 2015); *Norych v. Admiral Ins. Co.,* No. 08–60330–CIV, 2010 WL 2557502 (S.D. Fla. June 23, 2010).

8. 42 U.S.C. § 1988 provides:

 In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [ ], the Religious Freedom Restoration Act of 1993 [ ], the Religious Land Use and Institutionalized Persons Act of 2000 [ ], title VI of the Civil Rights Act of 1964 [ ], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . .

42 U.S.C. § 1988. In its second order on attorneys' fees, the Court stated that its discretion to award attorneys' fees under the Consent Decree stemmed from Plaintiffs' status as the prevailing party pursuant to 42 U.S.C. § 1988. (DE 913-7). Although the Parties subsequently entered the 2004 Stipulations also providing for attorneys' fees, both Parties seem to assume that their authority to agree to Plaintiffs' fee entitlement stems from § 1988. The Court need not address whether the 2004 Stipulations alone are sufficient to support an award of fees because, as discussed herein, Plaintiffs are the prevailing party under § 1988.

9. The fee provision of the PLRA provides:
 (1) In any action brought by a prisoner who is confined to any jail, prison or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that—
 (A) the fee was directly and reasonably incurred in proving an actual violation of

and reasonably incurred in enforcing the relief ordered' for the violation." *Cody v. Hillard*, 304 F.3d 767, 776 (8th Cir. 2002). A subsequent order vacating a consent decree does "not change the fact that the class members had proven actual violations of their rights." *Id.* at 777; *see also Webb v. Ada Cty.*, 285 F.3d 829, 834 (9th Cir. 2002) (rejecting defendant's argument that plaintiff is "not entitled to attorney's fees incurred in monitoring and enforcing the judgment and consent decree pursuant to the PLRA because [the plaintiff] failed to demonstrate that the postjudgment fees were incurred in proving an actual violation of the Constitution"). As the Ninth Circuit has explained:

> If a postjudgment fee request could only be granted if the attorney's services were directly linked to a discrete constitutional violation, fees incurred "in enforcing the relief" that the court had ordered because of demonstrated previous constitutional violations, could not be awarded. To the contrary, when subsections (A) and (B) [of the PLRA] are read together, it is apparent that Congress intended that a plaintiff is entitled to fees incurred in enforcing a judgment entered upon proof that the plaintiff's constitutional rights had been violated.

*Webb*, 285 F.3d at 834.

Here, Plaintiffs prevailed on the overcrowding claim via the 1994 Consent Decree. Specifically, Defendants admitted that "conditions of confinement have previously been determined to be unconstitutional" because "[t]he population caps established by this court were essentially continuously exceeded until the summer of 1992." Defendants also agreed to implement a set of court-enforceable remedies to address overcrowding. (DE 913–1 at 2, 4, 8–11).

■ The ACLU's subsequent work was "directly and reasonably incurred in enforcing the relief ordered for the violation." *See* 42 U.S.C. § 1997e(d)(1). Specifically, the ACLU defended against multiple, ongoing efforts to terminate the Consent Decree. *See Cody*, 304 F.3d at 777 ("We hold that the class's effort to prolong the efficacy of the remedial decree was time spent 'enforcing' that decree, and is fully compensable. Whether a plaintiff is pressing a contempt motion or defending against a motion to vacate, in both cases the point is to give effect to an existing remedy, suggesting that the two circumstances should be treated alike."). In addition, the ACLU enforced Defendants' obligations related to overcrowding in the Consent Decree by facilitating the use of various experts on overcrowding, who proposed reforms that Defendants implemented, and by negotiating the 2004 Stipulations, in which Defendants agreed that unconstitutional overcrowding remained an ongoing issue. *See Cody*, 304 F.3d at 777 (holding that work securing a settlement agreement that sets forth specific responses to constitutional violations that were acknowledged in the previous consent decree is compensable under the PLRA as work "incurred in enforcing" the decree). Accordingly, I find that the ACLU's work related to overcrowding is compensable under § 1988 and the PLRA, as well as the 2004 Stipulations.[10]

---

the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
(B) (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or

(ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
42 U.S.C. § 1997e(d)(1).

10. Defendants do not object to Plaintiffs' entitlement for work related to any of the other categories of constitutional claims.

As to the reasonableness of the ACLU's compensable hours, Defendants point to three areas "where greater efficiency and productivity might have been achieved," but also state that any concerns "have been mitigated by the ACLU's apparent effort to 'no-charge' [1,066 hours of] unproductive time." (DE 1003–1 at 27–28). Even so, the Court finds that the hours spent in these three areas are reasonable. First, Defendants suggest that law clerks could have been trained "earlier" to conduct medical record review in the place of attorneys, but Defendants do not identify when this training should have occurred, and the ACLU undeniably delegated extensive amounts of work to its law clerks.

Second, Defendants assert that the time spent on issues related to legal fees sought in this Motion "may be considered more than was reasonably necessary." (*Id.* at 26). However, the number of hours spent appears reasonable given the scope of the fee request.

Third, Defendants assert that the ACLU's travel time is "open to some question" because Plaintiffs billed for the cost of NPP attorneys' travel from Washington D.C. despite the participation of the ACLU of Florida. (*Id.* at 26). However, the ACLU of Florida did not join until 2010, the ACLU's lean staffing required trips to Florida by the NPP attorneys, and Plaintiffs' counsel having been unable to find qualified local co-counsel, "the exclusion of out-of-town counsel's travel time is [not] proper." *See Johnson v. Univ. Coll. of Univ. of Ala.,* 706 F.2d 1205, 1208 (11th Cir. 1983).

Accordingly, Defendants objections fail, and Plaintiffs are entitled to compensation for the full 3,528 hours submitted.[11]

### ii. Hourly Rate

Plaintiffs request that the Court apply an hourly rate of $219.00 for attorneys and $160.00 for law clerks. Defendants argue that Plaintiffs have miscalculated the applicable hourly rates for attorneys under the PLRA, and that the rates for law clerks should be reduced proportionately.

Under the PLRA, "[n]o award of attorney's fees ... shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel [ (the "CJA Rate") ]" 42 U.S.C. § 1997e(d)(3). The Parties dispute the meaning of the phrase, "the hourly rate established under section 3006A." Defendants argue that it refers to the rate set forth in § 230.16 of the Judicial Conference Guidelines for Administering the CJA and Related Statute, which is the rate actually paid to court-appointed counsel, as funded by congressional appropriations for the federal courts.[12] Plaintiffs argue the phrase refers to the rate authorized by the Judicial Conference, as set forth in the current Federal Judiciary Congressional Budget Summary, whether or not Congress ultimately funds that rate.[13]

---

**11.** Defendants' argument that the ACLU's time sheets do not sufficiently distinguish between the various constitutional claims addressed by the Consent Decree is moot in light of the Court's determination that the ACLU is entitled to fees for work on the overcrowding claim. The Court notes that the ACLU's time sheets are not too vague for the Court to determine entitlement to fees simply because they do not identify the specific constitutional claim, especially given that much of the ACLU's work related to all of the constitutional claims.

**12.** Under § 230.16, the CJA Rate for 2016 was $129 per hour. *See* Chapter 2, § 230: Compensation and Expenses of Appointed Counsel, available at http://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-expenses#a230_16 (last accessed August 4, 2017). 150 percent of $ 129 is $ 193.50, the rate that Defendants argue applies.

**13.** The CJA Rate in the current Federal Judiciary Congressional Budget Summary is $146 per hour. (DE 992–5).

■ While the Court is unaware of any Eleventh Circuit opinion that has addressed this issue, the Ninth and Sixth Circuit have held that the PLRA rate should be based on the rate authorized in the Federal Judiciary Congressional Budget Summary, rather than the rate actually paid to court-appointed attorneys based on Congressional appropriations. *See Hadix v. Johnson*, 398 F.3d 863 (6th Cir. 2005); *Webb v. Ada County*, 285 F.3d 829, 838–39 (9th Cir. 2002). The Sixth Circuit explained its reasoning as follows:

> While congressional appropriations may place a practical limitation on the amount actually paid to court-appointed counsel, there is no language in § 3006A that expressly limits the Judicial Conference's discretion to set rates based on budgetary constraints. If Congress had wanted attorney fees under the PLRA to be based on the amount of money budgeted for payment of court-appointed counsel, it could easily have used such language rather than cross-referencing § 3006A.
>
> Moreover, in the absence of express statutory language, there is no inherent reason why attorney fees under the PLRA should be limited by the amount budgeted to pay court-appointed counsel under the CJA. Attorney fee awards in prisoner civil rights litigation are paid from the pockets of unsuccessful defendants whether they be private individuals or government entities; such fees are not paid from funds set aside by Congress to compensate court-appointed counsel under the CJA. There is no logical reason to limit fee awards in such

cases to the amount of money set aside to fund the CJA.

*Hadix*, 398 F.3d at 867 (6th Cir. 2005). The Court finds this reasoning persuasive. In addition, in his 2002 order on attorneys' fees, Judge Hoeveler adopted this position, citing *Webb v. Ada County*, 285 F.3d 829 (9th Cir. 2002). (DE 913–7 at 2). Accordingly, applying 150 percent to the rate of $146, set forth in current Federal Judiciary Congressional Budget Summary, the applicable hourly rate for attorneys is $219.00.[14]

■ Relevant market rates support the reasonableness of the requested rate.[15] Generally, "Plaintiffs are entitled to have their lawyers compensated at a reasonable hourly rate, which is the 'prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (quotation omitted). Given the skill and reputation of the NPP attorneys, as well as the challenges of civil rights class action litigation, the requested rate of $219 is well below the prevailing market rates. (DE 992–13).

■ The *Johnson* factors also support the reasonableness of $219 per hour for attorneys. Under factor one, time and labor, Plaintiffs staffed the case efficiently by delegating substantial work to junior attorneys and law students and by no-charging all work that was arguably clerical. (DE 992–1 ¶ 20–21). For factor two, complexity, this case involved complex questions regarding the constitutionality of

---

14. Defendants do not dispute that the current, rather than historic, rate under the PLRA is the appropriate rate. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988) ("In this circuit, where there is a delay [in payment of attorneys' fees] the court should take into account the time

value of money and the effects of inflation and generally award compensation at current rates rather than at historic rate").

15. Beyond their argument as to the applicable rate dictated by the PLRA, Defendants do not dispute the reasonableness of $219 per hour.

prison conditions, and the resulting Consent Decree addressed nearly every aspect of operations and conditions at County facilities via comprehensive remediation plans. For factor three, attorney skill, the complexity of this case required skilled lawyers with specialized knowledge of prison and jail litigation. For factors four and seven, although the number of hours that NPP devoted to this case over 15 years is modest, Defendants' pending motions to terminate the Consent Decree prevented the ACLU from taking on additional work so that they were prepared to dedicate increased time to this case in the event the motions were set for hearing. (*Id.* ¶ 17). For factors five and nine, comparable rates, the rates are significantly below market rates in the Southern District of Florida for those with the reputation and experience of the ACLU's lawyers, as explained above. For factor six, the nature of the fee agreement between local counsel and the ACLU created an expectation in the ACLU of receiving fees when they accepted the case. For factor eight, the results obtained, the ACLU negotiated and oversaw the implementation of broad reforms in operations and conditions at the County's jail facilities. For factor ten, the undesirability of the case, various courts have recognized the stigma associated with corrections litigation, which was accentuated here in light of the pending motion to terminate when the ACLU joined as co-counsel. *See Alberti v. Klevenhagen,* 903 F.2d 352 (5th Cir. 1990) (recognizing the "undesirability" of prison conditions litigation). For factor eleven, the client relationship, the ACLU had no previous relationship with the client, but formed a long-term relationship over the course of the 15–year representation. For factor twelve, comparable cases support the reasonableness of the ACLU's hourly rate. *See Wyatt ex rel. Rawlins v. Sawyer,* 67 F.Supp.2d 1331 (M.D. Ala. 1999) (finding approximately 14,000 hours of post-judgment

monitoring and enforcement over a four-year period were reasonable and necessary in civil rights litigation regarding conditions in state mental health facilities). Accordingly, the Court concludes that the PLRA-capped rate of $219 for attorneys is a reasonable rate.

▇ Defendants' sole argument for reducing the hourly rate for law clerks to $100.00 is that the law clerk rate should be proportionally lower than the attorney rate. Thus, in light of the Court's determination that the attorney rate should not be reduced, Defendants' proportionality argument is moot. Furthermore, Defendants acknowledge that the PLRA does not call for a proportional reduction in the rate for law clerks based on the attorney hourly rate. (DE 1003–1 at 18). Finally, the Court finds that $160 per hour is in line with the prevailing market rates in the Southern District of Florida. *See, e.g., Bacon v. Stiefel Labs., Inc.,* No. 11-20489-CIV, 2014 WL 4825279, at *4 (S.D. Fla. Sept. 25, 2014) (finding $160 per hour reasonable rate for law clerks in securities case). The Court also notes that granting market rates to non-lawyers "encourages cost-effective delivery of legal services and, by reducing the spiraling cost of civil rights litigation, furthers the policies underlying civil rights statutes." *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (citation omitted). Accordingly, the Court finds that $160 per hour for law services provided by law clerks at the ACLU is a reasonable rate.

### iii. Adjustments

▇ Defendants do not argue for any adjustments to the lodestar beyond their argument to eliminate hours spent on the issue of overcrowding. In determining whether to adjust the lodestar, "[i]f the result was excellent, then the court should compensate for all hours reasonably ex-

pended." *Norman*, 836 F.2d at 1302 (citation omitted). "If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive." *Id.* (citation omitted). Here, the successful elimination of the overcrowding issue and the negotiation of a settlement to address ongoing issues related to facility operations reflect an excellent result, for which no downward adjustment in hours is appropriate.

In sum, the ACLU is entitled to payment for 3,528 hours at an hourly rate of $219 for attorneys and $160 for law clerks, for a total of $757,840.00 in attorneys' fees.

### B. Non–Taxable Costs

Plaintiffs request $41,327.54 in expenses incurred by NPP, and $316.81 in expenses incurred by the ACLU of Florida, pursuant to the provisions in the Consent Decree and 2004 Stipulations, which state that Plaintiffs are entitled to "attorney's fees and costs." (DE 913–1 ¶ 30; 913–8 ¶ 11; DE 913–9 ¶ 11). Defendants do not object to the costs requested, which the Court finds were directly and reasonably incurred in proving and enforcing an actual violation of Plaintiffs' rights. (DE 992–3; DE 992–12). Accordingly, Plaintiffs are awarded $41,327.54 in expenses incurred by NPP and $316.81 in expenses incurred by the ACLU of Florida. It is hereby

ORDERED AND ADJUDGED that

(1) Plaintiffs' Motion (DE 992) is **GRANTED.** Plaintiffs are awarded $799,484.35 in attorneys' fees and non-taxable costs, plus interest from the date of judgment.[16]

(2) Plaintiffs' Placeholder Motion (DE 965) is **DENIED AS MOOT.**

---

**16.** Defendants do not object to Plaintiffs' entitlement to interest from the date of judgment. *See Georgia Ass'n of Retarded Citizens v. McDaniel*, 855 F.2d 794, 799 (11th Cir. 1988) ("We conclude that when a district court taxes costs against a losing party, the award of costs bears interest from the date of the original judgment."); *see also Laube v. Allen*, 506 F.Supp.2d 969, 991 (M.D. Ala. 2007) (awarding prevailing plaintiffs in prisoner rights suit interest "from the date of the judgment establishing their entitlement to the award.").

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 14 day of August, 2017.